## COBBLEDICK et al. v. UNITED STATES.*

No. 571. Argued January 30, 1940.—Decided February 26, 1940.

*Mr. Donald R. Richberg,* with whom *Messrs. Felix T. Smith* and *Chalmers G. Graham* were on the brief, for petitioners.

*Mr. Wendell Berge,* with whom *Solicitor General Biddle, Assistant Attorney General Arnold* and *Mr. James C. Wilson* were on the brief, for the United States.

*Together with No. 572, *Brawner et al.* v. *United States,* and No. 573, *Palmuth et al.* v. *United States,* also on writs of certiorari to the Circuit Court of Appeals for the Ninth Circuit.

Opinion of the Court by Mr. Justice Frankfurter, announced by the Chief Justice.

The District Court for the Northern District of California denied motions to quash subpoenas *duces tecum* addressed to the petitioners and directing them to appear and produce documents before a United States grand jury at the July, 1939, term of that court. From the denial of these motions petitioners sought review by way of appeal to the Circuit Court of Appeals for the Ninth Circuit, 107 F. 2d 975. That court found itself to be without jurisdiction and dismissed the appeals. We brought the cases here, 308 U. S. 547, because of conflict between the decision below and that of the Circuit Court of Appeals for the Second Circuit, *In re Cudahy Packing Co.,* 104 F. 2d 658. The matter in controversy—and the sole question raised in all three cases—vitally concerns the effective administration of the federal criminal law. The question is whether an order denying a motion to quash a subpoena *duces tecum* directing a witness to appear before a grand jury is included within those "final decisions" in the district court which alone the circuit courts of appeal are authorized to review by § 128 (a) of the Judicial Code (28 U. S. C. § 225).[1]

Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act[2] and has been departed from only when observance of it would practically defeat the

[1] Section 128 (a) provides that, "The circuit courts of appeal shall have appellate jurisdiction to review by appeal final decisions. . . ." Similar language was used in the Act of 1891, c. 517, 26 Stat. 828.

[2] §§ 21, 22, 25 of the Act of September 24, 1789, 1 Stat. 73, 83–85. For a discussion of the historical background, English and American, of the finality concept, see Crick, The Final Judgment as a Basis for Appeal, 41 Yale L. J. 539.

right to any review at all.[3]   Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration.   Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment.   To be effective, judicial administration must not be leaden-footed.   Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause. These considerations of policy are especially compelling in the administration of criminal justice.   Not until 1889 was there review as of right in criminal cases.[4]   An accused is entitled to scrupulous observance of constitutional safeguards.   But encouragement of delay is fatal to the vindication of the criminal law.   Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship.   The correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction

[3] See § 129 of the Judicial Code, 28 U. S. C. § 227, dealing with appeals from interlocutory injunctions, appeals from interlocutory decisions in receivership cases and from interlocutory decrees determining rights and liabilities in admiralty litigation.

[4] See *United States* v. *More*, 3 Cranch 159.   Only by certificate of division of opinion in the circuit courts could review be obtained. See Curtis, Jurisdiction of the United States Courts, 82.   By the Act of 1889 review as of right was allowed in capital cases.   25 Stat. 655, 656.   For the history of federal criminal appeal see *United States* v. *Sanges,* 144 U. S. 310, 319–22.

before its reconsideration by an appellate tribunal. *Cogen* v. *United States,* 278 U. S. 221.

In thus denying to the appellate courts the power to review rulings at *nisi. prius,* generally, until after the entire controversy has been concluded, Congress has sought to achieve the effective conduct of litigation. For purposes of appellate procedure, finality—the idea underlying "final judgments and decrees" in the Judiciary Act of 1789 and now expressed by "final decisions" in § 128 of the Judicial Code—is not a technical concept of temporal or physical termination. It is the means for achieving a healthy legal system. As an instrument of such policy the requirement of finality will be enforced not only against a party to the litigation but against a witness who is a stranger to the main proceeding. Neither a party nor a non-party witness will be allowed to take to the upper court a ruling where the result of review will be "to halt in the orderly progress of a cause and consider incidentally a question which has happened to cross the path of such litigation . . ." Mr. Chief Justice Taft, in *Segurola* v. *United States,* 275 U. S. 106, 112. This is so despite the fact that a witness who is a stranger to the litigation could not be party to an appeal taken at the conclusion of the main cause. Such was the ruling in *Alexander* v. *United States,* 201 U. S. 117. In that case, witnesses were directed to appear and produce documents before a special examiner designated by the circuit court to hear testimony in a suit brought by the United States to enforce the Sherman Law. Upon refusal to submit the documents called for in the subpoena, the United States petitioned the circuit court for an order requiring compliance. The petition was granted, and appeals were then allowed to this Court. These appeals were dismissed for want of jurisdiction. The grounds of the decision are best indicated in the language of the opinion:

"In a certain sense finality can be asserted of the orders under review, so, in a certain sense, finality can be asserted of any order of a court. And such an order may coerce a witness, leaving to him no alternative but to obey or be punished. It may have the effect and the same characteristic of finality as the orders under review, but from such a ruling it will not be contended there is an appeal. Let the court go further and punish the witness for contempt of its order, then arrives a right of review, and this is adequate for his protection without unduly impeding the progress of the case . . . This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory in the original suit." 201 U. S. at 121–22.

We must now decide whether the situation of a witness summoned to produce documents before a grand jury is so different from that of the witness in the *Alexander* case that the sound considerations of policy controlling there should not govern here. The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its findings. The proceeding before a grand jury constitutes "a judicial inquiry," *Hale* v. *Henkel*, 201 U. S. 43, 66, of the most ancient lineage. See *Wilson* v. *United States*, 221 U. S. 361. The duration of its life, frequently short, is limited by statute. It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found. Opportunity for obstructing the "orderly progress" of investigation should no more be encouraged in one case than in the other. That a grand jury proceeding has no defined litigants and that none

may emerge from it, is irrelevant to the issue. The witness' relation to the inquiry is no different in a grand jury proceeding than it was in the *Alexander* case. Whatever right he may have requires no further protection in either case than that afforded by the district court until the witness chooses to disobey and is committed for contempt. See *Hale* v. *Henkel, supra,* and *Wilson* v. *United States, supra.* At that point the witness' situation becomes so severed from the main proceeding as to permit an appeal. To be sure, this too may involve an interruption of the trial or of the investigation. But not to allow this interruption would forever preclude review of the witness' claim, for his alternatives are to abandon the claim or languish in jail.

This analysis of finality is illustrated by *Perlman* v. *United States,* 247 U. S. 7.[5] There, exhibits owned by Perlman and impounded in court during a patent suit were, on motion of the United States attorney, directed to be produced before a grand jury. Perlman petitioned the district court to prohibit this use, invoking a constitutional privilege. This petition was denied and Perlman sought review here. The United States claimed that the action of the district court was "not final" but merely interlocutory and therefore not reviewable by this Court. We rejected the Government's contention. To have held otherwise would have rendered Perlman "powerless to avert the mischief of the order . . ." 247 U. S. at 13. Perlman's exhibits were already in the court's possession. If their production before the grand jury violated Perlman's constitutional right then he could protect that right only by a separate proceeding to prohibit the forbidden use. To have denied him opportunity for review on the theory that the district court's order was interlocutory would have made the doctrine of finality a

---

[5] Compare *Go-Bart Co.* v. *United States,* 282 U. S. 344.

means of denying Perlman any appellate review of his constitutional claim. Due regard for efficiency in litigation must not be carried so far as to deny all opportunity for the appeal contemplated by the statutes.[6]

One class of cases dealing with the duty of witnesses to testify presents differentiating circumstances. These cases have arisen under § 12 of the Interstate Commerce Act, whereby a proceeding may be brought in the district court to compel testimony from persons who have refused to make disclosures before the Interstate Commerce Commission.[7] In these cases the orders of the district court directing the witness to answer have been held final and reviewable. *Interstate Commerce Comm'n* v. *Brimson*, 154 U. S. 447; *Harriman* v. *Interstate Commerce Comm'n*, 211 U. S. 407; *Ellis* v. *Interstate Commerce Comm'n*, 237 U. S. 434. Such cases were duly considered in the *Alexander* case, and deemed to rest "on statutory provisions which do not apply to the proceedings at bar, and, while there may be resemblances to the latter, there are also differences." 201 U. S. at 121. The differences were thought controlling. Appeal from an order under § 12 was again here in the *Ellis* case, *supra*, fully argued in the briefs, and again differentiated from a situation like that in the *Alexander* case. "No doubt" was felt that an appeal lay from the district court's direction to testify. "It

---

[6] *Burdeau* v. *McDowell*, 256 U. S. 465, is consistent with our analysis. In that case proceedings were commenced in the district court for the recovery of documents held by the Government for use before a grand jury. The district court granted the relief sought, and the Government appealed. In this Court the action of the district court was treated as final, and hence subject to review. But the practical considerations there involved were entirely different from those which must govern here. In *Burdeau* v. *McDowell* the action of the district court was itself an interruption of the grand jury's inquiry; appeal by the Government did not halt the "orderly progress" of the inquiry.

[7] 25 Stat. 858; 49 U. S. C. § 12.

is the end of a proceeding begun against the witness"—
was the pithy expression for this type of case. 237 U. S.
at 442. And it is a sufficient justification for treating
these controversies differently from those arising out of
court proceedings unrelated to any administrative agency.
The doctrine of finality is a phase of the distribution of
authority within the judicial hierarchy. But a proceeding
like that under § 12 of the Interstate Commerce Act may
be deemed self-contained, so far as the judiciary is con-
cerned—as much so as an independent suit in equity in
which appeal will lie from an injunction without the
necessity of waiting for disobedience. After the court has
ordered a recusant witness to testify before the Commis-
sion, there remains nothing for it to do. Not only is this
true with respect to the particular witness whose testi-
mony is sought; there is not, as in the case of a grand
jury or trial, any further judicial inquiry which would be
halted were the offending witness permitted to appeal.
The proceeding before the district court is not ancillary
to any judicial proceeding. So far as the court is con-
cerned, it is complete in itself.

We deem it unnecessary to say more in sustaining the
Circuit Court of Appeals. The challenged judgment is

*Affirmed.*

Mr. Justice Murphy did not participate in the consid-
eration or decision of these cases.