Francis J. **LANGFORD**, Individually and as natural guardian of Frank P. Langford, an infant, Plaintiff-Appellee,

v.

**CHRYSLER MOTORS CORP.,**
Defendant-Appellant,

and

**Woodbridge Dodge, Inc.,**
Defendant-Appellee.

No. 197, Docket 74–1637.

United States Court of Appeals,
Second Circuit.

Argued Oct. 24, 1974.

Decided March 17, 1975.

Marshall G. Kaplan, Brooklyn, N. Y., for plaintiff-appellee.

Marvin V. Ausubel, Emile Z. Berman and A. Harold Frost, New York City, for Chrysler Motors Corp., defendant-appellant.

Julian H. Gottlieb, Markhoff, Gottlieb, Lazarus, D'Auria & Maldonado, New York City, for Woodbridge Dodge, Inc., defendant-appellee.

Before WATERMAN, OAKES and GURFEIN, Circuit Judges.

WATERMAN, Circuit Judge:

In this diversity action, Francis J. Langford filed a complaint in the United States District Court for the Eastern District of New York alleging that injuries sustained by his minor son in an automobile accident resulted from the negligent manufacture of the automobile by the defendant Chrysler Motors Corp. (Chrysler) and from the negligent servicing of the automobile by the vendor, Woodbridge Dodge, Inc. Langford alleged that the defendants' breaches of their respective warranties, express and implied, provided the basis of liability. In its answer, Chrysler asserted a counterclaim against Langford for indemnity or contribution, alleging that his negligent operation of the car caused the accident. Chrysler also asserted a crossclaim against Woodbridge Dodge for indemnity or contribution alleging that its negligent servicing of the Langford car and its breach of its warranties caused the accident. After trial and in its brief on appeal Chrysler claimed that Langford sued the wrong defendant in that Chrysler Corporation rather than Chrysler Motors Corp. manufactured the Langford automobile. At oral argument Chrysler withdrew this belated "wrong defendant" argument. Woodbridge Dodge counterclaimed for indemnification from Chrysler alleging that Chrysler's defective manufacture of the automobile was the principal cause of the accident.

After a bench trial, Judge Costantino awarded $9,000 in damages to Langford and granted full indemnification from Chrysler to Woodbridge Dodge. Chrysler appeals and advances six grounds for reversal of the decision below: (1) insufficient proof under New York law to support a strict product liability award; (2) prejudicial erroneous admission of certain testimony by the plaintiff's expert witness; (3) the limiting of Chrysler's attack upon the qualifications of plaintiff's expert witness; (4) the trial judge's handling of a subpoena duces tecum; (5) the various decisions of the court on the indemnity and contribution issues; and (6) the amount of damages awarded. We affirm the decision below in all respects.

The plaintiff had purchased a new automobile, equipped with power steering, from Woodbridge Dodge in July, 1971. He and his wife, the principal users of the automobile, experienced no trouble with the steering of the car during the first 4,000 miles of driving. On December 2, 1971, the plaintiff took the car for its initial service checkup to Woodbridge Dodge, which, in addition to servicing the Langfords' specific complaints, provided a customary inspection of the automobile.

The plaintiff on the night of December 3, 1971 was driving his six year old son home from a Boy Scout meeting when an accident occurred. That night the road was lightly trafficked and well lighted, and the weather conditions were clear. The plaintiff testified that he heard a loud snapping sound in the right front section of the automobile, and that, despite immediate braking, the car veered off the road and struck a parked car and a retaining wall. Mr. Langford's testimony at the trial was contradicted in part by the police officer who

was at the scene shortly after the accident and who testified that the plaintiff was in a "dazed condition" and had not then mentioned the snapping noise.

At the trial both Langford and Chrysler presented expert witnesses to testify about the possible cause of the accident. Predictably, these witnesses disagreed sharply. Vasilis Morfopoulis testified for the plaintiff. He was of the opinion that a defective ball joint in the tie rod assembly caused the accident. Specifically, this expert stated that a pre-existing tightness of the ball joint caused the following sequence: galling on the upper bearing of the ball stud, a peculiar angularity of the stud, its pry-out, and finally a loss of steering control. Chrysler presented two expert witnesses, engineers in the employ of Chrysler Corporation, who testified to the effect that there was no evidence of any defects which existed prior to the accident and that the pry-out was caused by the impact of the collision itself.

Judge Costantino accepted the version of Morfopoulis and found that, under the New York law of strict product liability, Chrysler, as the manufacturer of the automobile, was liable, having caused the injuries to plaintiff's son, and that Woodbridge Dodge, as vendor of the automobile, the other defendant, was at fault only minimally, and was therefore entitled to full indemnification over and against Chrysler. Chrysler appeals these findings.

■ Chrysler's initial argument on this appeal concerns the proof necessary under the applicable law in this diversity action, New York law, to support a product liability award. In Codling v. Paglia, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973), a case factually similar to ours, the New York Court of Appeals stated at page 342, 345 N.Y.S.2d at 470, 298 N.E.2d at 628:

> We accordingly hold that, under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or

damages; provided: (1) that at the time of the occurrence the product is being used (whether by the person injured or damaged or by a third person) for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.

See, also, Velez v. Craine & Clark Lumber Corp., 33 N.Y.2d 117, 350 N.Y.S.2d 750 (1973). It is clear that the plaintiff has satisfied these requirements. The automobile was being used for the purpose and in the manner normally intended. There was no proof that Langford in the exercise of reasonable care could have discovered the defect. The issue of whether Langford negligently operated the automobile was before the Court, and the issue was resolved in Langford's favor.

■■ Chrysler's objection to the sufficiency of the evidence stems from the belief that under New York law a plaintiff must show by direct proof that the defect existed while the automobile was in the manufacturer's possession. In *Codling,* the Court of Appeals rejected the contention that the plaintiff there could not recover because of failure to show that the defect existed at the date of manufacture. The court stated in part "though the happening of the accident is not proof of a defective condition, a defect may be inferred from proof that the product did not perform as intended by the manufacturer." Codling v. Paglia, supra, 32 N.Y.2d at 337, 345 N.Y.S.2d at 465, 298 N.E.2d at 325. Here, as in *Codling,* the plaintiff testified about the circumstances of the accident, and in addition, he presented expert testimony about the defective part. Compare, Butkowski v. General Motors Corporation, 497 F.2d 1158 (2 Cir. 1974). See, also,

Barker, Circumstantial Evidence in Strict Liability Cases, 38 Albany L.Rev. 11 (1973). This circumstantial evidence, although controverted, was sufficient to support an inference that the defect existed prior to Chrysler's delivery of the automobile to Woodbridge Dodge. Cf. Wasik v. Borg, 423 F.2d 44 (2 Cir. 1970).

■ Chrysler objects to the testimony of the plaintiff's expert witness, Morfopoulis, on the ground that there was no evidence indicating that the automobile was in the same condition on the date of his inspection and removal of parts in February, 1972 and the date of the accident, December 3, 1971. Shortly after the accident the vehicle was towed from Staten Island, New York to a salvage pool yard in Newark, New Jersey. There was no testimony bearing upon the vehicle's journey to Newark or upon relevant events in the intervening weeks. The plaintiff testified from examination of photographs of the automobile taken both at the time of the accident and at the time of Morfopoulis's inspection that the external condition of the automobile was unchanged. This positive identification provides a sufficient foundation for admission into evidence of the auto's tie rod assembly. Cf. Burris v. American Chicle Co., 120 F.2d 218 (2 Cir. 1941). The tie rod assembly, located well within the chassis of the vehicle, was not easily alterable, a fact to which the expert witnesses of Chrysler indirectly testified when discussing the strength of the ball stud. This fact relaxes the requirement of showing that there had been no substantial changes in the evidence between the time of accident and the time of trial. Walker v. Firestone Tire & Rubber Company, 412 F.2d 60 (2 Cir. 1969). Prior to the testimony of Morfopoulis on this point, the two Chrysler experts had testified as to the condition of the tie rod assembly parts and had explained the tests they had performed in order to support their expert testimony. In light of this defense evidence the admission of Morfopoulis's testimony was properly within the discretion of the trial judge.

■ At the trial Chrysler went to great lengths to attack the credibility of plaintiff's expert witness, Morfopoulis, and now objects to the court's alleged restrictions on their efforts. As Technical Director of American Standard Testing Bureau, Inc., the witness worked on as many as two hundred reports a year and his signature appeared on 18,000 reports a year. Defense counsel brought out these facts, and, in addition, questioned the witness on his other fields of claimed expertise. The trial judge permitted this inquiry, although he was openly skeptical about the relevancy of it to the issue of whether the witness could qualify as a metallurgist. In this connection, the judge forbade the reading of the transcript of an unrelated state court trial in which the witness had appeared, but allowed questions to be asked him about it. In Walker v. Firestone Tire & Rubber Company, supra, questions concerning misstatements of an expert witness's educational qualifications and the extent of his patent holdings given at a prior trial were, the Second Circuit held, improperly excluded for the fact that a witness, purportedly an expert, had lied at a previous trial about his qualifications had a direct bearing on his credibility. Here, apparently, the evidence sought to be admitted did not directly concern the qualifications of the witness as a metallurgist, but only proved that the witness had signed numerous reports in diverse fields. The action of the court was not an abuse of discretion, and did not improperly limit the defense attack upon the qualifications of plaintiffs' expert witness.

Chrysler objects to the court's treatment of a subpoena duces tecum issued to American Standard Testing Bureau, Inc. The subpoena, issued September 6, 1973, first required the production of "all work notes, bills, and records" prepared for the case; and, secondly, the production of

all records from 1965 to 1973 indicating the names of the cases, the Courts, the dates, the nature of the testimony and the bills and fees for examinations and/or testimony charged in connection with any and all cases in which

Vasillas [sic] Morfopoulis has appeared as a witness.

The return date was September 10, 1973, the day the trial commenced. On the second day of the trial, Morfopoulis testified that he had brought the subpoenaed documents to court. As to the underlying work reports of the present action, he testified that, with the exception of photographs, all his work product had been recorded on tape cartridges which had been erased after the completion of the two accident reports. Plaintiff's counsel promptly moved to quash the second item of the subpoena, the litigation-related work records of the witness from 1965 to 1973. Judge Costantino, finding the request to produce an unreasonable one, granted the motion to quash.

█ Chrysler argues that the motion to quash the subpoena duces tecum was untimely in that it was made after the time specified for compliance and that the plaintiff had no standing to object to the subpoena. Rule 45(b) Fed.R.Civ.P., requires that a motion to quash a subpoena duces tecum be made "promptly and in any event at or before the time specified in the subpoena for compliance therewith." There is nothing in the record to indicate that defense counsel had made a request for the material on that date, or that the witness was unprepared to comply with, or to object to, the subpoena on its return date. Moreover, defendants raise no claim of prejudice resulting from the one day delay. Under these circumstances, the failure of movant to comply with the literal requirements of Rule 45(b) does not provide grounds for a reversal of the judgment below. See, In re Surety Association of America, 388 F.2d 412 (2 Cir. 1967).

█ In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness. 5A J. Moore, Federal Practice ¶ 45.05[2], (2d ed. 1974). Plaintiff's motion to quash the subpoena arose after an extensive inquiry into the qualifications of plaintiff's witness. In this context, it appears that plaintiff was objecting not only to the production of these records but also to the continued attack upon his witness. Judge Costantino's somewhat inartful handling of this question does not warrant reversal of the judgment. The materials sought were not only voluminous, but also they had no relevance to the main issues in the case, and had but dubious relevance to the witness's qualifications as a metallurgist. The Court had permitted defense counsel ample opportunity to attack the witness's qualifications. We are convinced that whatever additional information these unrelated materials might have provided would not have affected the substantial rights of the defendant. Fed.R.Civ.P. 61; See, also, Shaw v. Scoville, 369 F.2d 909 (2 Cir. 1966).

Chrysler further contends that even if the trial court properly found it to be liable to plaintiff New York law entitles it to indemnity from the plaintiff on its counterclaim against him, and from the other defendant, Woodbridge Dodge, on its crossclaim against it.

█ In Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), the New York Court of Appeals rejected the concepts of "active and passive" negligence in the determination of indemnification among joint tortfeasors, and announced a rule of relative contribution, stating:

> [The] right to apportionment of liability or to full indemnity, then, as among parties involved together in causing damage by negligence, should rest on relative responsibility and to be determined on the facts. Id. at 153, 331 N.Y.S.2d at 392, 282 N.E.2d at 295.

This rule has been extended to cases involving breaches of warranty. Noble v. Desco Shoe Corp., 41 A.D.2d 908, 343 N.Y.S.2d 134 (1st Dep't 1973).

█ As to the plaintiff Francis J. Langford, Chrysler argues that his negligence in the operation of the car caused the accident, and that therefore he should assume liability for the injuries to

his son. Chrysler points out that the *Dole* rule of relative contribution can apply to situations in which the co-plaintiff, as driver of the automobile, was negligent. Moreno v. Galdorisi, 39 A.D.2d 450, 336 N.Y.S.2d 646 (2d Dep't 1972). Here, however, the court found that Francis Langford had not been negligent. Langford's account of the accident was contradicted in part by the testimony of the police officer who was at the accident scene, and by some of the testimony of the expert witnesses on how the accident happened. Unless clearly erroneous, the evaluation of the credibility of witnesses and the weight of the evidence is the responsibility of the trial judge. We cannot say that the findings here are clearly erroneous.

As to Woodbridge Dodge, Chrysler maintains that in the course of its customary pre-delivery inspection or initial service checkup, Woodbridge Dodge should have discovered the defect found to have existed in the tie rod assembly. Read into the record was the deposition of Woodbridge Dodge's service manager, who testified that the automobile was inspected by raising the vehicle on a lift and by visually checking the parts for tightness or looseness. All that was visible of the ball joint were the top threads; its interior composition could not be seen. There was no evidence to indicate that Woodbridge was negligent when inspecting the Langford automobile, and there was no basis to infer this from the accident itself. We agree with the trial judge that Woodbridge Dodge's degree of fault was minimal and justified the award of full indemnification from Chrysler.

Chrysler argues that the award of $9,000 for the child's injuries and his pain and suffering was an excessive award. The boy spent ten days in the hospital, suffered a chipped tooth and a swollen face, and has a slight permanent scar. Although the court's award may be thought generous, we do not find it excessive.

The judgment below is affirmed.