## In re GRAND JURY PROCEEDINGS.

### Appeal of UNITED STATES of America.

### No. 78–1089.

United States Court of Appeals,
First Circuit.

Argued May 3, 1978.

Decided July 11, 1978.

Hamilton Phillips Fox, III, Atty., Dept. of Justice, Washington, D. C., with whom Lincoln C. Almond, U. S. Atty., Providence, R. I., Gerald E. McDowell, Washington D. C., and Robert C. Power, Sp. Attys., Boston Strike Force, were on brief, for appellant.

John Leubsdorf, Boston, Mass., by appointment of the Court, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Learning in the fall of 1977 of possible violations of federal law, the federal grand jury in the District of Rhode Island began an investigation into the activities of particular state officials and private individuals. On February 3, 1978, the United States Attorney petitioned the district court for an order authorizing disclosure of grand jury materials to an attorney with the Securities Exchange Commission, the attorney general of Rhode Island, and a Rhode Island detective involved in the state investigation of the same charges. The district court entered an order the same day denying disclosure to the Rhode Island attorney general and detective and limited the use of the information disclosed to the SEC attorney to investigation of federal crimes. The United States appeals from so much of the order as denies disclosure to the detective.[1]

Because the investigation is continuing, certain details remain confidential. In its motion to the district court, the United States alleged, in essence, that the misconduct under investigation involved violations of both federal and state law, and that an insufficient number of federal investigatory personnel were available to help the grand jury gather necessary information. The detective who had been looking into the matter with respect to state law violations, and had been cooperating with federal investigators, testified before the grand jury on December 8, 1977. A week later, the grand jury after secret deliberations reported that it wished to appoint the detective as its agent and to give him access to its materials. The United States subsequently made an ex parte motion to this effect.

The district court, although expressing sympathy for the Federal Government's manpower problems, felt itself constrained by Fed.R.Crim.P. 6(e) from authorizing the disclosure requested.[2] The court stated

1. Because this appeal, as the proceedings below, have been ex parte, this court appointed Professor John Leubsdorf of Boston University School of Law as friend of court to present the case in opposition to the United States. Professor Leubsdorf's brief and oral argument, complementing the Government's presentation, have been of substantial assistance.

2. The Rule provides:
"(e) Secrecy of Proceedings and Disclosure.
(1) General Rule. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the Government, or any person to whom disclosure is made under paragraph (2)(A)(ii) of

that the Government had not "shown with particularity" the "compelling necessity" for disclosure that is the prerequisite to a court order under paragraph 6(3)(2)(C)(i) of the Rule, citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683–84, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Furthermore the court felt that disclosure to the detective to enable him to assist the grand jury would be an inappropriate use of the 6(e)(2)(C)(i) exception, which the court believed to exist primarily to aid proceedings other than the grand jury investigation that turns up the material. It noted the difficulties it would have in ensuring the detective used the information disclosed only for the assigned purpose. Finally, the court ruled that the 6(e)(2)(A)(ii) exception for "such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law" did not apply to the state detective. The court construed the Rule to refer to federal government personnel only, and ruled that the federal grand jury's designation of the state policeman as its agent could not bring him within the term.

On appeal, the Government argues that the district court misinterpreted Rule 6(e), applying too high a standard as to the showing the Government must present to obtain disclosure. It argues that the detective was "government personnel" on these facts, that disclosure to aid the present grand jury proceedings is appropriate under Rule 6(e)(2)(C)(i), and that the showing of need made here was compelling enough to require disclosure. Counsel in opposition refers to substantial legislative history and the definition of "Attorney for the government" in Fed.R.Crim.P. 54(c)[3] as conclusive that Congress in Rule 6(e)(2)(A)(ii) meant to refer only to federal government personnel, and argues that there is no way the state detective can come within the limitation. Counsel would also have us sustain the district court's refusal to order disclosure under Rule 6(e)(2)(C)(i). He points to the ongoing nature of the grand jury investigation, the difficulty of controlling the uses to which the information might be put by the detective in light of his duties under state law, the insubstantiality of the need asserted, the lack of any justification for disclos-

this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court.

(2) Exceptions.

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce Federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so dis-

closed, with the names of the persons to whom such disclosure has been made.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made— ·

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

(3) Sealed indictments. The Federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance and execution of a warrant or summons.

3. "Attorney for the government" is defined to mean "the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney . . ."

ing *all* grand jury materials to the detective, and the fact that the motion was ex parte, as factors militating against granting the order here.

At the outset the question of appellate jurisdiction must be confronted. The United States has not sought an extraordinary writ under 28 U.S.C. § 1651 or certification of the question under 28 U.S.C. § 1292(b). Our jurisdiction, if it exists, must rest on 28 U.S.C. § 1291, which requires the existence of a "final order" of the district court as the subject of the appeal.

■ The United States argues that the motion for disclosure constituted an independent plenary proceeding, and that the district court's order constituted a final judgment as to that proceeding. In support of this contention it cites cases recognizing the appealability of orders denying applications for electronic surveillance, *In re Application of the United States*, 563 F.2d 637 (4th Cir. 1977); *Application of the United States*, 427 F.2d 639 (9th Cir. 1967), and certain cases concerning the disclosure of grand jury material, *In re Special February 1971 Grand Jury*, 490 F.2d 894 (7th Cir. 1973); *In re Biaggi*, 478 F.2d 489 (2d Cir. 1973); *Doe v. Rosenberry*, 255 F.2d 118 (2d Cir. 1958); *United States v. Dyoir*, 147 F.2d 336 (5th Cir. 1945). The surveillance application cases, however, involved an order which "concluded—at least for the moment—the business of the district court," *see Sheehan v. Doyle*, 513 F.2d 895, 898 (1st Cir. 1975), inasmuch as no grand jury proceeding then existed in the district court to which the order was merely adjunct. Similarly, the disclosure orders involved in *Biaggi*, *Rosenberry*, and *Dyoir* were not incidental to an ongoing grand jury investigation but were the result of applications filed after the grand jury investigation had ended, seeking disclosure of evidence originally uncovered by the grand jury. Although it

is not clear from the opinion in *In re Special February 1971 Grand Jury, supra,* whether the grand jury investigation had ended at the time disclosure was requested, the issue of appellate jurisdiction was apparently not raised or considered.

The instant order seems most analogous to rulings on discovery issued during a lawsuit. Such rulings are commonly regarded as being interlocutory rather than final for purposes of § 1291. *See, e. g., In re United States*, 565 F.2d 19 (2d Cir. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978); *North Carolina Ass'n of Black Lawyers v. North Carolina Bd. of Bar Examiners*, 538 F.2d 547 (4th Cir. 1976); *Grinnell Corp. v. Hackett*, 519 F.2d 595 (1st Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975). Here a grand jury proceeding is in progress and this is but one order in conjunction with the jury's ongoing activities. To be sure, it has been said that because of the nature of a grand jury, interlocutory appeals will not have as disruptive an effect on its proceedings as they would on a trial. *See United States v. Wilson*, 421 U.S. 309, 318, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *In re Investigation Before the April 1975 Grand Jury*, 531 F.2d 600, 605 n. 8 (D.C.Cir. 1976). But this view was expressed during consideration of the appropriateness of recognizing an exception to the finality requirement, not in deciding whether an order was final for purposes of appeal. As a general rule, orders issued in connection with ongoing grand jury proceedings, like discovery orders during litigation, have been held to be interlocutory and non-appealable, subject to certain narrowly drawn exceptions not applicable here. *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *compare United States v. Nixon*, 418 U.S. 683, 690–92, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).[4] At least

---

4. Arguably the concerns that militate against interlocutory review of judicial orders arising from ongoing grand jury proceedings—particularly the recognition that "encouragement of delay is fatal to the vindication of the criminal law," *Cobbledick, supra* 309 U.S. at 325, 60

S.Ct. at 541—carry less force where a grand jury investigation is in its initial stage, not yet focused on definite targets or events. In this early phase of the investigation, expeditious action may seem less important than securing an authoritative determination of the rules un-

when grand jury proceedings remain in progress, to which the order is integral, we believe a disclosure order such as this is not a "final order" within § 1291.

■ The Government contends that even if the district court's order is not final for purposes of § 1291, it fits within the "collateral order" exception to the finality requirement recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In a recent case involving the *Cohen* doctrine, this court cited Professor Moore's statement of the rule:

> " '(1) the order must be a final determination of a claim of right "separable from, and collateral to," rights asserted in the action; (2) it must be "too important to be denied review," in the sense that it "presents a serious and unsettled question"; and (3) its review cannot, in the nature of the question it presents, await final judgment because "when that time comes, it will be too late effectively to review the . . . order and rights conferred . . . will have been lost, probably irreparably." ' "

*Grinnell Corp., supra*, 519 F.2d at 596 (quoting 9 J. Moore, Federal Practice ¶ 110.10, at 133 (2d ed. 1973)). Conceding that the order here is separable and collateral, it is less clear that it meets either the "serious and unsettled question" or the "too late effectively to review" tests. The issue of whether a state official is "government personnel"—the only question here that does not implicate the court's discretion—is not, in our view, truly "unsettled" in the sense that there is leeway for more than one interpretation. The district court's construction seems virtually incontrovertible in light of Rule 54(c) and the legislative history of

Rule 6(e). The remainder of the court's opinion, which deals with the kind of showing the Government must make to obtain a court order under Rule 6(e)(2)(C)(ii), largely involves a discretionary balancing process that turns on the facts of the particular case. With respect to this part of the opinion, we cannot say that "decision of the issue appealed will settle the matter not simply for the case in hand but for many others." *Grinnell Corp., supra* at 597.

As for part three of the *Cohen* rule—the need to permit an appeal now to avoid an irretrievable loss of rights—the Government has several alternative means at its disposal to preserve the disclosure right at issue here. First, and most simply, it could seek a redetermination of the matter by the district court based on a stronger showing of need than it has yet presented. In addition, the Government could either have sought the cooperation of the district court in certifying this question under § 1292(b), or if it felt that circumstances warranted, go into contempt in order to obtain appellate review. We recognize that because the Government is the party seeking review, the contempt alternative is even less attractive here than it was in *Grinnell Corp., supra* at 598.[5] The United States Attorney has an especially high duty to show respect for an obedience to the orders of the federal courts. Still the option cannot altogether be ignored. Moreover, the obvious difficulties associated with contempt where the Government is the aggrieved party would doubtless be a factor that might induce this court, in a suitable case, to look with greater favor on supervisory mandamus, which is a third avenue for obtaining review in circumstances where it is manifestly impor-

---

der which the investigation is to operate. *But cf. id.* at 327–28, 60 S.Ct. 540. As a practical matter, however, a reviewing court is in no position to determine at what stage an investigation lies, and therefore cannot assess in any realistic manner the degree to which the interests described in *Cobbledick* are implicated. To take the facts of this case, the investigation from the outset appears to have concentrated on particular public officials and private individuals, and the record gives no indication that its focus has shifted.

5. *But cf. In re United States*, 565 F.2d 19 (2d Cir. 1977), *cert. denied, Bell v. Socialist Workers Party*, —— U.S. ——, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978) (court of appeals declines jurisdiction in situation where Attorney General otherwise must go into contempt to obtain review in spite of appellate court's own doubts as to propriety of district court order requiring disclosure).

**18**

tant that review be obtained. Were a district court clearly to misinterpret the limitations of Rule 6(e) or plainly abuse its discretion thereunder either in ordering or denying disclosure (a showing that manifestly cannot be made in this case), mandamus is likely to lie. *See, e. g., In re United States,* 565 F.2d 173 (1st Cir. 1977); *In re Melvin,* 546 F.2d 1 (1st Cir. 1976); *United States v. United States District Court,* 444 F.2d 651 (6th Cir. 1971), *aff'd,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *cf. Grinnell Corp., supra* at 599. In light of these alternatives, and given the discretion invested in the district court by Rule 6(e)(2)(C)(i), we think it would not substantially add to the protection afforded the interests asserted by the Government were appeals as of right to be recognized from refusals by district courts to allow disclosure under that provision.

*Appeal dismissed.*