The STATE OF ILLINOIS, et al.,
Plaintiffs-Appellees,

v.

F.E. MORAN, INC., and Owen A.
Moran, Defendants-Appellants.

No. 83–1594.

United States Court of Appeals,
Seventh Circuit.

Argued March 27, 1984.

Decided July 24, 1984.

As Amended Aug. 3, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 12, 1984.

Claudia J. Lovelette, Ross & Hardies, Chicago, Ill., for defendants-appellants.

Thomas J. DeMay, Asst. Atty. Gen., Chicago, Ill., for plaintiffs-appellees.

Before PELL, CUDAHY, and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Two defendants in this antitrust damage action (actually a consolidation of several actions, but we shall treat them as one) ask us to reverse an order by the district court made under Rule 6(e)(3)(C)(i) of the Federal Rules of Criminal Procedure. The order directed the Justice Department to turn over to the plaintiffs the transcript of the testimony of two witnesses before the grand jury that had indicted the corporate defendant for criminally violating the antitrust laws. We must consider the appealability of the order, the defendants' standing to contest it, and if those hurdles are cleared the merits of the order.

█ Rule 6(e)(3)(D) authorizes the filing, in the federal district where the grand jury was convened, of a petition for disclosure of matters occurring before the grand jury. If the petition is filed in the federal criminal proceeding that follows indictment by the grand jury, the order granting or denying the petition is an interlocutory order respecting discovery and cannot be appealed under 28 U.S.C. § 1291, which makes "final decisions" of district courts appealable to the courts of appeals. See *In re Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d 1079, 1085 (7th Cir.1982), modified on other grounds, 717 F.2d 1136 (1983); *United States v. Carney,* 665 F.2d 1064, 1065 (D.C.Cir.1981) (per curiam); 9 Moore's Federal Practice ¶ 110.13[11], at p. 193 (2d ed. 1983). But if instead the petitioner is asking the court in which the grand jury was convened to give him access to the grand jury transcript for use in a civil suit, the order disposing of it is a final decision under section 1291. E.g., *Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 103 S.Ct. 1356, 1360 n. 9, 75 L.Ed.2d 281 (1983); *Illinois v. Sarbaugh,*

552 F.2d 768, 773–74 (7th Cir.1977); *In re Grand Jury Matter Impounded,* 703 F.2d 56, 59–62 (3d Cir.1983); *In re Sells,* 719 F.2d 985, 988 (9th Cir.1983); *In re Corrugated Container Antitrust Litigation,* 687 F.2d 52, 53–54 (5th Cir.1982). The latter is, at least approximately, the situation here. The plaintiffs in this antitrust case—who of course were not parties to the criminal proceeding—settled the case with some of the defendants, and the settlement agreements contained provisions requiring the individual (as distinct from corporate) settling defendants to testify in the civil action. The plaintiffs later filed in the civil action this petition seeking access to the transcripts of the testimony that two of the settling and one of the nonsettling defendants had given before the grand jury. The nonsettling defendants who are the appellants in this court objected to disclosure. The petition was heard by the district judge presiding over the antitrust case (Judge Shadur), and he granted it as to the settling defendants. The district in which the civil case is pending and the district where the grand jury had been convened are the same. The criminal proceeding is long since over.

█ What makes this case different from the standard Rule 6(e)(3)(C)(i) case, illustrated by *Abbott,* is that here the petition was filed with the judge presiding in the civil case in which the grand jury transcript was to be used as an aid in discovery. In *Abbott,* the petition (filed, though on different grounds, by a plaintiff in the same antitrust suit in which the petition before us was filed) had been denied by the chief judge of the district where the grand jury had been convened—that is, by the judge supervising the grand jury, see N.D. Ill.Crim.R. 1.04(A)—rather than by the judge presiding over the civil suit. See also *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 216, 99 S.Ct. 1667, 1671, 60 L.Ed.2d 156 (1979); *id.* at 233, 99 S.Ct. at 1680 (concurring opinion). The Supreme Court in *Abbott* noted noncommittally that "further disclosure requests would be filed with the district judges presiding

over the state's civil antitrust actions...." 103 S.Ct. at 1360 n. 9. The chief judge then transferred his responsibilities as supervisor of the grand jury proceedings to Judge Shadur to facilitate Judge Shadur's acting on such requests. This appeal grows out of one of those requests. Judge Shadur's order is therefore most naturally viewed as a discovery order in the antitrust civil action, and discovery orders as a general rule are not appealable. See Wright, The Law of Federal Courts 550–51 (4th ed. 1983).

But no court has suggested that the identity of the ordering judge determines the appealability of a grand jury disclosure order, although there are intimations of such a view in Justice Rehnquist's concurring opinion in the *Douglas Oil* case. See 441 U.S. at 232–33, 99 S.Ct. at 1679–80. *In re Corrugated Container Antitrust Litigation, supra,* was a case like this where the judge presiding over the civil suit issued the order to assist in discovery in the suit, and yet the court held the order appealable without even remarking this feature. We agree that such orders are appealable. Although a discovery order cannot be appealed directly, when as in the usual case the order is directed against a party he can refuse to obey it and can get appellate review by appealing the order of criminal contempt punishing him for his refusal. See, e.g., *Cobbledick v. United States,* 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940); 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3914, at p. 569 (1976). So there is a safety valve. But someone—whether or not a party—who does not want his grand jury testimony disclosed, or as in this case does not want the grand jury testimony of his adversaries' witnesses disclosed, cannot resist compliance with the district court's disclosure order, and therefore cannot provoke a contempt judgment against him, because he does not have possession of the transcript. Either the court in which the grand jury was convened does or the Justice Department does, and therefore if the court orders the transcript disclosed there is no way for anyone (except the Depart-

ment) who is affected by the order to set the stage for an appeal by resisting the order and being held in contempt. This is true, of course, even if the witness in question is a party or witness in a criminal proceeding. But the Supreme Court, attaching great importance to expediting criminal proceedings, has held that the policy against interlocutory criminal appeals outweighs the policy of allowing immediate appellate review of orders that impair substantial rights. See, e.g., *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Flanagan v. United States,* —— U.S. ——, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984). And in the criminal context it should make no difference that the petition for disclosure of matters before the grand jury was separately docketed or even that it was filed in a separate court, though in the latter situation appeals were allowed (probably incorrectly, as we shall see) in *United States v. Byoir,* 147 F.2d 336, 337 (5th Cir.1945), and *Gibson v. United States,* 403 F.2d 166, 167 (D.C.Cir. 1968). The objection to allowing an appeal is the same in either case: it would delay the criminal proceeding. Cf. *In re Grand Jury Investigation of Violations of 18 U.S.C. § 1621 (Perjury),* 318 F.2d 533, 535 (2d Cir.1963).

Our conclusion that an order to disclose grand jury testimony is appealable (as long as the appeal will not delay, or, we suppose, interfere with) a criminal proceeding gains additional support from the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Indeed, the conclusion is more candidly based on that doctrine than on the fiction that an order granting a Rule 6(e)(3)(C)(i) petition is a "final decision" just because it disposes of a separately docketed proceeding. As we explained recently in *In re UNR Industries, Inc.,* 725 F.2d 1111, 1117–18 (7th Cir.1984), the *Cohen* doctrine allows the appeal under section 1291 of orders that cause irreparable harm to the appellant but do not fit the technical definition of an injunction and so are not appealable under

section 1292(a)(1). An order disclosing testimony before a grand jury is such an order. This is not because the harm done to the witness is irreparable (there may in fact be no harm done to him at all), but because any harm to interests sought to be protected by keeping grand jury proceedings secret cannot be undone by a later reversal of the district court's order.

Consistent with our analysis, courts occasionally allow appeal of discovery orders where the contempt route is for one reason or another closed. See, e.g., *In re Berkley & Co.*, 629 F.2d 548, 551 (8th Cir.1980); *Socialist Workers Party v. Grubisic*, 604 F.2d 1005, 1007–08 (7th Cir.1979) (per curiam); *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir.1979) (per curiam). They do this even though, if the contempt route is closed, the party complaining of the disclosure order can still invite the entry of a final judgment (with prejudice) against him before the order is complied with, and he can then appeal immediately from what would be an incontestably final decision within the meaning of section 1291. See, e.g., *Clift v. United States*, 597 F.2d 826, 828 (2d Cir.1979) (Friendly, J.); *Familias Unidas v. Briscoe*, 544 F.2d 182, 191 (5th Cir.1976); 15 Wright, Miller & Cooper, *supra*, § 3914, at pp. 577–78. So there would still be a safety valve, at least in a case like the present, where the petition for disclosure was acted on by the same judge who is presiding over the civil case in which the grand jury transcripts are to be used; and maybe also in a case where the petition is acted on by a judge in the same district, or at least by a judge in another district of the same circuit. But if the petition is granted by a judge in another circuit, then even if the court of appeals reviewing the final judgment entered against the appellant expresses the view that the petition should have been denied, the court cannot force compliance with its wishes. Even where this problem does not exist, however, the safety valve really is not an adequate one. By suffering entry of a final judgment against him the appellant stakes his all on winning the discovery point; and if the point is not

absolutely essential to his case on the merits and the stakes in that case are substantial, almost certainly he will not take the risk. In that event there will be no possibility of judicial review of the disclosure of the grand jury testimony before that testimony is disclosed and the harm to the public interest in grand jury secrecy done.

This is a powerful argument for appealability of a grand jury disclosure order. Maybe it is too powerful. It could be applied to cases—which are the vast majority of the Rule 6(e)(3)(C)(i) cases—where the grand jury transcript is requested by either prosecutor or defendant for use in connection with the criminal proceeding itself rather than another proceeding, and the district court grants the request over protest. But the two situations are not symmetrical. The grounds for disclosure of a grand jury transcript in the criminal proceeding itself are fairly narrow and reasonably well specified (see Fed.R.Crim.P. 6(e)(3)(A), (B), (C)(ii), (iii), 12(i), 16(a)(1)(A), 26.2; 18 U.S.C. § 3500 (Jencks Act)). In contrast, no grounds are specified for the use of a grand jury transcript in another judicial proceeding; the permissibility of such use is governed only by the judge-made "strong showing of particularized need" standard, of which more presently. But it is not clear how the difference in standards should affect appealability; if anything, the discretion that the district judge has in applying the "particularized need" standard argues for a more limited right of appeal. The real difference between the two situations is the policy against interlocutory criminal appeals. Any attempt to appeal a grand jury disclosure order in a criminal proceeding runs into that policy. Cf. *Flanagan v. United States*, *supra*, 104 S.Ct. at 1055, and *United States v. Bird*, 709 F.2d 388, 391 and n. 17 (5th Cir.1983), both noting the judicial reluctance to apply *Cohen* in criminal cases. This no doubt is why the cases do not allow appeal of the disclosure order in the criminal proceeding itself, whether under section 1291 directly or under section 1291 as embellished by *Cohen*.

And yet there might be an extraordinary case in which an appeal from a disclosure order in the criminal proceeding would be proper—for example, an appeal by a witness who had argued unsuccessfully to the district court that if his grand jury testimony was disclosed he would be murdered. We have found no case quite so dramatic, but we have found others where appeal was allowed because of exceptional circumstances. See *In re November 1979 Grand Jury*, 616 F.2d 1021, 1024–25 (7th Cir.1980); *In re Special April 1977 Grand Jury*, 587 F.2d 889, 891 (7th Cir.1978); *In re Grand Jury Proceedings*, 654 F.2d 268, 270 (3d Cir.1981). And a number of cases allow, though without discussing the issue of appealability, appeals from orders disposing of Rule 6(e)(3)(C)(i) petitions to disclose grand jury testimony for use in state as distinct from federal criminal proceedings. See *In re Grand Jury Matter*, 682 F.2d 61 (3d Cir.1982); *In re Disclosure of Evidence*, 650 F.2d 599 (5th Cir.) (per curiam), modified on other grounds, 662 F.2d 362 (5th Cir.1981) (per curiam); *Wisconsin v. Schaffer*, 565 F.2d 961, 965 n. 1 (7th Cir. 1977); *In re Special February 1971 Grand Jury*, 490 F.2d 894 (7th Cir.1973); but see *In re Grand Jury Proceedings*, 580 F.2d 13, 16–18 (1st Cir.1978). In such cases, however, there is no issue of delaying a federal criminal proceeding. But in the *Byoir* and *Gibson* cases, cited earlier, it was assumed, quite without reference to the *Cohen* doctrine (*Byoir* preceded *Cohen*), that an order to disclose grand jury testimony could be appealed under section 1291 so long as it was not ancillary to another proceeding in the same court. Cf. *University Life Ins. Co. v. Unimarc Ltd.*, 699 F.2d 846, 848 (7th Cir.1983); *United States v. Fried*, 386 F.2d 691, 694–95 (2d Cir.1967). Yet in *DiBella v. United States*, supra, 369 U.S. at 132–33, 82 S.Ct. at 660–61, the Supreme Court held that an order granting the defendant's motion to suppress evidence in his criminal trial was not appealable just because it was entered in a different district from where the trial was to be held. *DiBella* follows in time, and may be taken to have overruled, *Byoir*.

*Gibson*, which merely cites *Byoir* and offers no independent analysis, falls with it.

■ But the order of disclosure in this case, though made by the judge presiding over the civil action in which the grand jury testimony would be used if disclosed, is as we have said appealable. And these non-settling defendants have standing to appeal it, even if the question of standing can be regarded as open after *Douglas Oil*, which we very much doubt. The Supreme Court held there that the petitioners, who had been defendants in a criminal antitrust suit and were now defendants in a civil suit, had standing to object to an order disclosing grand jury testimony that had been given by their employees. Although the appellants here are objecting to the disclosure of grand jury testimony given by complete strangers, there is no basis in the Supreme Court's opinion for distinguishing the case on that ground. The Court based its conclusion that there was standing on facts present in equal measure here: (1) that "release of the transcripts to [the petitioners'] civil adversaries could result in a substantial injury to them," and (2) that the petitioners, though they had pleaded *nolo contendere* to the criminal charges against them, were within the class of the "innocent accused" for whose protection (in part) grand jury secrecy is designed, because "there may have been accusations made for which no indictment was returned." 441 U.S. at 218 n. 8, 99 S.Ct. at 1672 n. 8.

Even treating standing as an open question, we think the appellants have it. The order they seek to get reversed will unless reversed inflict tangible harm on them, for it will give the plaintiffs grand jury transcripts that they can use at the settling defendants' depositions to jog memories about events witnessed years ago (and maybe also, as we shall see, to make it more difficult for the remaining defendants to cross-examine these witnesses at trial effectively) and thus get more effective testimony to use against the appellants. This harm would be the same kind that allows a party to contest pretrial discovery directed against a third party, such as a

custodian of records relevant to the litigation. See, e.g., *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 437–40 (E.D.Pa.1981); *Morales v. Turman*, 59 F.R.D. 157 (E.D.Tex.1972); *Teplitzky v. Boston Ins. Co.*, 52 F.R.D. 160 (E.D.Pa. 1971).

True, there is more to standing than injury. The concept is also used, as we noted recently, to limit the amount of federal litigation and to protect the persons with the biggest stakes in a dispute by limiting the right to sue to those persons. See *People Organized for Welfare & Employment Rights (P.O.W.E.R.) v. Thompson*, 727 F.2d 167, 172–73 (7th Cir.1984). But as it happens the appellants have a bigger stake in the disclosure issue than anyone else except the plaintiffs. The Department of Justice has, of course, a considerable interest in maintaining the confidentiality of federal grand juries, which are investigative tools of the Department, but an interest it must balance against its other interests, including encouraging private enforcement of the antitrust laws as a supplement to public enforcement limited by a tight budget. The settling defendants might have had an interest in keeping their grand jury testimony secret but they traded it away for concessions in the settlement negotiations. The only ones who still have an undiluted interest in preserving the secrecy of this testimony are the remaining defendants, and as they are the logical parties to contest the district court's order as well as being actually harmed by it they have standing to appeal.

■ So we come at last to the merits. A petition to use grand jury testimony in another judicial proceeding can succeed only upon "a strong showing of particularized need" for the testimony. See, e.g., *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir.1984), and cases cited. True, some people think that the federal courts make a fetish of grand jury secrecy—that there is little reason to preserve it after the grand jury has been discharged. See, e.g., Dash,

*The Indicting Grand Jury: A Critical Stage?*, 10 Am.Crim.L.Rev. 807, 818–23 (1972), and references in Wright, Federal Practice and Procedure: Crim.2d § 106, at p. 243 n. 2 (1982). California allows liberal access to grand jury transcripts, see Cal. Penal Code § 938.1(b), and the heavens have not fallen there yet. So little is kept secret nowadays that many participants in grand jury proceedings, whether as witnesses, jurors, or prosecutors, probably have no expectations of long-term secrecy. Yet there are, as we shall see, interests in grand jury secrecy that this point does not even touch, interests arising from the fact that grand jury witnesses testify without counsel present and testify about other people as well as themselves.

At all events the view that grand jury secrecy is very much worth preserving even after the grand jury has been discharged—a view ably defended, with specific reference to the use of grand jury transcripts in private antitrust cases, in Note, *Disclosure of Grand Jury Materials Under Clayton Act Section 4F(b)*, 79 Mich. L.Rev. 1234, 1259–68 (1981)—is far too well established in the federal system to be questioned by us. It must therefore be a matter of concern to us that the district judge did not think it necessary to require a strong showing of particularized need here. He seemed to think it enough or nearly enough that the grand jury witnesses whose testimony he ordered disclosed to the plaintiffs had made no objection to the disclosure (having agreed to testify in the civil case), and that the Department of Justice had not objected either. We are more impressed by the second point than the first. If the consent of a witness before the grand jury to the release of his grand jury testimony were sufficient to raise the veil of secrecy, this might encourage bringing suits against such witnesses just to induce them to consent to the release of their grand jury testimony as part of the consideration for settling the case. There is no similar objection to viewing the Justice Department's consent as freely given, and as an original matter it could be argued that the Department is in a better

position than any court to balance the interest in grand jury secrecy against competing law-enforcement needs. But the Supreme Court implicitly but decisively rejected this argument when it held last year that the Department must make a strong showing of particularized need before grand jury testimony will be disclosed to it for its own use in another proceeding. *United States v. Sells Engineering, Inc.,* —— U.S. ——, 103 S.Ct. 3133, 3140, 77 L.Ed.2d 743 (1983).

■ If the only purpose of grand jury secrecy were to maximize the grand jury's investigatory effectiveness, *Sells* would make little sense; law enforcers can weigh that value against competing law-enforcement needs better than judges can. But there are other purposes (concisely summarized in *In re Biaggi,* 478 F.2d 489, 491–92 (2d Cir.1973) (Friendly, J.)), including an interest in protecting witnesses both from retaliation and from undeserved public obloquy when they are haled before the grand jury and questioned vigorously, maybe even browbeaten, without counsel present; and of this interest the Department of Justice is not the unswerving champion. Nor can any private person be counted on to assert the full range of interests that grand jury secrecy protects. The witness himself, as we have noted, can sometimes be pressured into giving his consent to the release of his testimony, as may have happened here; and anyway the reputations of other persons—persons whom the witness might have mentioned in his grand jury testimony—may be at stake if his grand jury testimony is disclosed, yet they may not even know that a Rule 6(e)(3)(C)(i) petition has been filed. It follows from all this that the district court must assume responsibility for deciding whether a "strong showing of particularized need" has been made—whether, in other words, the benefit of disclosure to the party seeking it clearly outweighs the cost to the interests that are served by keeping grand jury proceedings secret. See *In re Grand Jury Proceedings, Miller Brewing Co., supra,* 687 F.2d at 1088; cf. *Douglas Oil, supra,* 441 U.S. at 223–24, 99 S.Ct. at 1675. The court cannot just defer to the Justice Department, or accept the grand jury witness' consent as conclusive.

■ As the able district judge did not discharge what we have concluded was his responsibility in this case, we must reverse the order of disclosure. Ordinarily this would mean a remand. But since it is clear to us that the plaintiffs have failed to make the required showing, we shall so rule now to avert stretching out a collateral branch of this aging antitrust case—filed five years ago and still in discovery—any longer.

The plaintiffs do not—not yet anyway—want the settling defendants' grand jury testimony in order to impeach, or refresh recollection, at trial. These were the instances of particularized need mentioned in *United States v. Procter & Gamble Co.,* 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). They are well illustrated by *Illinois v. Harper & Row Publishers, Inc.,* 50 F.R.D. 37, 42 (N.D.Ill. 1969), where the grand jury testimony of witnesses who at their depositions "were repeatedly unable to recall significant facts" and gave deposition testimony that "sometimes conflicted with documentary evidence, including correspondence to and from the witnesses themselves," was properly released during discovery. Since the witnesses in this case have not yet been deposed, it is too early to tell whether their grand jury testimony is needed to impeach or to refresh recollection. Maybe it will turn out to be necessary; the grand jury sat more than five years ago and some of the testimony given before it may concern events that occurred almost 30 years ago, for that is when the conspiracy is alleged to have begun. But "maybe" is not good enough. See *Lucas v. Turner, supra,* 725 F.2d at 1105. Until these witnesses are deposed, no one can be sure that their memories need the jogging that the grand jury transcript might provide. The request for the transcript is premature.

The plaintiffs say they need it now in order to make sure that the witnesses testi-

fy truthfully at their depositions. But as the witnesses have not yet said anything to cast doubt on their veracity, or on their friendliness to the plaintiffs, this is not a convincing reason. The plaintiffs may be looking forward to a time when the remaining defendants will request the settling defendants' grand jury testimony in order to exploit possible inconsistencies between that testimony and the witnesses' deposition testimony in the present case. But whether or not the plaintiffs are that far-sighted, they can only want the witnesses' grand jury testimony disclosed *before* their depositions in order to try to make the testimony dovetail with the grand jury testimony. Although the rehearsal of witnesses is permitted by the Federal Rules of Civil Procedure, it is not so worthy a goal— being as much calculated to obscure as to illuminate the truth—as to offset even minimal damage to the interests behind keeping grand jury proceedings secret. Cf. *United States v. Tierney,* 424 F.2d 643, 646 (9th Cir.1970). We therefore need not determine precisely how much such damage the disclosure of testimony given in those proceedings would do in this case.

REVERSED.

CUDAHY, Circuit Judge, dissenting.

I would not object to a vacation of Judge Shadur's judgment and a remand for a determination of the plaintiff's particularized need for the grand jury testimony. However, for the majority to find as a matter of law that particularized need does not exist in these circumstances is, to my knowledge, wholly unprecedented. The Supreme Court stated in *Douglas Oil Company of California v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), that

> disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy.... [A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification. In sum, as so often is the situation in our

jurisprudence, the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court.... Moreover, *we emphasize that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion.*

*Id.* at 223, 99 S.Ct. at 1675 (citations omitted) (emphasis supplied).

The Supreme Court thus enunciated a balancing test to determine whether the interest in maintaining the secrecy of grand jury proceedings outweighed the interest of those seeking disclosure. Further, the Court emphasized that the district court has considerable discretion in evaluating these interests. As the Fifth Circuit stated in *In re Corrugated Container Antitrust Litigation,* 687 F.2d 52, 55 (5th Cir.1982), the district judge is "the best informed individual in the legal world concerning the details of the [present] litigation." We should not undertake to usurp the discretion vested in the district court judge nor should we substitute our view for that of the district judge who, once the correct legal standard is applied, is in the better position to make a factual determination. Particularly in this case, where the public interest in maintaining secrecy is so minimal and the plaintiff, which itself represents a substantial sector of the public, has previously satisfied the district judge that its need outweighs the need for secrecy, we should be reluctant to usurp the district court's role. Grand jury secrecy should not be upheld merely to shield these antitrust defendants when there is no other articulable policy for such secrecy. I therefore respectfully dissent.