**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HILDA L. SOLIS, Secretary of
Labor,* United States Department
of Labor,
               *Plaintiff-Appellee,*

v.

JASMINE HALL CARE HOMES, INC.,
HALL CARE HOMES, INC., GEORGE
K. HALL, ESTELA HALL,
         *Defendants-Appellants.*

No. 08-15223

D.C. No.
CV-05-01306-GEB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
September 3, 2009—San Francisco, California

Filed July 1, 2010

Before: J. Clifford Wallace, Diarmuid F. O'Scannlain, and
Andrew J. Kleinfeld, Circuit Judges.

Per Curiam Opinion

---

*Hilda L. Solis is substituted for her predecessor, Elaine Chao, as Secretary of Labor. Fed. R. App. P. 43(c)(2).

## COUNSEL

Gregory F. Jacob, Solicitor of Labor, Steven J. Mandel, Paul L. Frieden, Rachel Goldberg (argued), United States Department of Labor, Washington, DC, for the plaintiff-appellee.

Baldwin J. Lee (argued), Amy Wintersheimer-Findley, Jennie L. Lee, Allen Matkins Leck Gamble Mallory & Natsis LLP, San Francisco, California, for the defendants-appellants.

**OPINION**

PER CURIAM:

This is an appeal from a partial summary judgment. We dismiss the appeal for lack of jurisdiction under the final decision rule.

## I.   Facts

Jasmine Hall Care Homes and the individually named defendants operate residential care facilities for developmentally disabled adults in California. The Secretary of Labor sued to enjoin violations of the Fair Labor Standards Act, alleging that the defendants have willfully violated overtime compensation requirements.

The Department of Labor investigator reported that Jasmine Hall's timekeeping records were inadequate. Direct observation showed that employees rotated shifts, sleeping at the facility when they were supposedly off duty, but not really being off duty at all. Although only one employee was treated by the employer as being on duty during any eight-hour period, "there was usually more than one employee providing needed care or supervision to clients at almost any time of day," and "even in the evenings the clients seemed to require a great deal of attention and interaction." And the employees were not free to leave during their five 24-hour shifts per week, except on authorized company business.

The investigator wrote that "Jasmine Hall live-in residential staff members were required to share relatively small rooms with up to 3 other staff members, often of the opposite sex." Staff members had bunk beds in shared rooms, or in one case, two double beds for two married couples, with a sheet hung between the two beds, and in another, a double bed for the married couple and a third bed for another employee. "[C]lients frequently knocked on the staff room door in the

middle of the night for all sorts of reasons, such as wanting a shower," and staff aides had to interrupt their supposedly personal time for such tasks as administering medicine and taking clients to the toilet. Yet they were only paid for eight hours of the 24 they spent on duty.

A Department of Labor regulation, 29 C.F.R. § 785.23, addresses the application of the Fair Labor Standards Act to employees who reside on company premises. The regulation recognizes the difficulty of determining what hours are worked, since employees may be on the premises but nevertheless have time to "engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own." *Id.* The regulation therefore allows an employer in this situation to avoid paying otherwise mandatory wages by making a "reasonable agreement" with the employee as to which hours will be paid. The district court held, in response to the parties' cross-motions for summary judgment, that Jasmine Hall Care Homes could not invoke that regulation in order to avoid wage and hour obligations as to any employee who shares a bedroom with another employee.

The defendants immediately appealed the partial summary judgment. The Department of Labor moved to dismiss for lack of jurisdiction, on the ground that there was no final decision. The district court did not certify the appeal under 28 U.S.C. § 1292(b). Our motions panel denied the motion to dismiss without prejudice to its being renewed in appellee's brief, and it has been.

## II.  Analysis

[1] Congress, with some explicit exceptions, has limited our appellate jurisdiction to "final decisions" of the district courts. 28 U.S.C. § 1291. Interlocutory decisions generally cannot be appealed until the cases are completed.

> Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all. Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment.

*Cobbledick v. United States*, 309 U.S. 323, 324-25 (1940) (footnotes omitted). Congress has carved out several carefully delimited classes of interlocutory orders excepted from the final judgment rule, *see* 28 U.S.C. § 1292, but none of them are invoked and none are applicable to this case. Similarly, the limited exception for appealability of certain collateral orders, as discussed in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), has not been urged in this appeal, and does not apply, given that the partial summary judgment order at issue here is not collateral, but central to the merits of the case.

[2] Appellants argue that this court has appellate jurisdiction under the 1964 Supreme Court decision of *Gillespie v. United States Steel Corp.*, 379 U.S. 148 (1964), which departed from the final judgment rule by weighing "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other," and holding that it had jurisdiction to reach the merits of the case where the questions on appeal were "fundamental to the further conduct of the case" and appellate jurisdiction "properly

implemented the same policy Congress sought to promote in [28 U.S.C.] § 1292(b) by treating this obviously marginal case as final and appealable under 28 U.S.C. § 1291." 379 U.S. at 152-54 (internal quotation marks omitted).

The Supreme Court in *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978), closed the *Gillespie* door all but a crack. The Court limited *Gillespie* in a footnote:

> Respondents also suggest that the Court's decision in [*Gillespie*] supports appealability of a class-designation order as a matter of right. We disagree. In *Gillespie*, the Court upheld an exercise of appellate jurisdiction of what it considered a marginally final order that disposed of an unsettled issue of national significance because review of that issue unquestionably "implemented the same policy Congress sought to promote in § 1292(b)," and the arguable finality issue had not been presented to this Court until argument on the merits, thereby ensuring that none of the policies of judicial economy served by the finality requirement would be achieved were the case sent back with the important issue undecided. In this case, in contrast, respondents sought review of an inherently nonfinal order that tentatively resolved a question that turns on the facts of the individual case; and, as noted above, the indiscriminate allowance of appeals from such discretionary orders is plainly inconsistent with the policies promoted by § 1292(b). If *Gillespie* were extended beyond the *unique* facts of that case, § 1291 would be stripped of all significance.

*Id.* at 477 n.30 (citations omitted) (emphasis added).

**[3]** Despite this near-abrogation of *Gillespie*, however, the Ninth Circuit has interpreted the *Coopers & Lybrand* footnote as a list of questions to determine whether the *Gillespie*

exception to finality applies. *Serv. Employees Int'l Union, Local 102 v. County of San Diego (SEIU)*, 60 F.3d 1346 (9th Cir. 1995), held that we did indeed have jurisdiction to review a partial summary judgment addressing applicability of the private sector "salary test" in the Fair Labor Standards Act to the public sector. We paraphrased footnote 30 of *Coopers & Lybrand*, and concluded that appellate jurisdiction would lie if all of the four factors *Coopers & Lybrand* used to limit *Gillespie* were satisfied:

> (1) the decision appealed was a marginally final order, (2) which disposed of an unsettled issue of national significance, (3) review implemented the same policy Congress sought to promote in § 1292(b), and (4) the finality issue was not presented to the appellate court until argument on the merits, thereby ensuring that policies of judicial economy would not be served by remanding the case with an important unresolved issue.

*Id.* at 1350 (internal quotation marks and brackets omitted). The case before fails to meet the fourth requirement, so we need not decide whether it meets the other three.

**[4]** The fourth element of the *SEIU* test is that "the finality issue was not presented to the appellate court until argument on the merits." That test, which is meant to encourage parties to alert us to a jurisdictional issue before the parties and the court waste time analyzing merits, has no application here. The Secretary of Labor raised the jurisdictional defect by a motion to dismiss shortly after this appeal was docketed and before the briefs were filed. Where a well-taken motion to dismiss for lack of jurisdiction is filed before the briefs are filed, we are unable to imagine how the fourth *SEIU* requirement could be satisfied.

Jasmine Hall Care Homes argues that our decision in *Smith v. Eggar*, 655 F.2d 181 (9th Cir. 1981), expanded the scope

of jurisdiction available under *Gillespie*. But *Smith* held that the order appealed from, while not a final order, was "sufficiently injunctive in nature to justify our taking jurisdiction under [28 U.S.C. § ] 1292(a)(1)," because it commanded compliance with the terms of an agreement negotiated by the parties during the litigation. 655 F.2d at 184. Section 1292(a)(1) provides appellate jurisdiction over district court orders granting, continuing, modifying, refusing, or dissolving injunctions. Jasmine Hall does not argue that the partial summary judgment was in any way injunctive.

*Smith* did state in the alternative that "[e]ven if this were not so, on the facts of this particular case we would be inclined to view the order as so fundamental to the litigation that both policy and common sense would dictate that we assume jurisdiction under the rule of *Gillespie*," 655 F.2d at 184-85, but that pronouncement was dicta. Ninth Circuit cases relying on *Smith* focus on the "sufficiently injunctive" language. *See, e.g.*, *United States v. Gila Valley Irrigation Dist.*, 31 F.3d 1428, 1441-42 (9th Cir. 1994); *Thompson v. Enomoto*, 815 F.2d 1323, 1326 (9th Cir. 1987). And we are not free to interpret *Gillespie* broadly.

In addition to the four factors we quoted in *SEIU*, we are bound by *Coopers & Lybrand*'s use of the word "unique." 437 U.S. at 477 n.30. The word the Court chose to use, "unique," means "being the only one of its kind." American Heritage Dictionary 1322 (2d College ed. 1985) (defining "unique" as "1. Being the only one of its kind; sole. 2. Being without an equal or equivalent; unparalleled."). In light of *SEIU*, we have to read "unique" as overstatement, meaning something like "exceedingly rare" rather than literally "unique." But that is as far as we can go in stretching the word that the Supreme Court used. The language *SEIU* used is not simply a "four-part test" where if the court can articulate some good reason under each part, then the Congressional restriction of appeals to "final decisions" can be avoided. As we held in *In re Subpoena*, *Gillespie* "must be sparingly

used," because "[t]o extend the doctrine beyond the facts of *Gillespie* would render the section 1291 finality requirement useless." *In re Subpoena Served on the Cal. Pub. Utils. Comm'n*, 813 F.2d 1473, 1479-80 (9th Cir. 1987). Footnote 30 of *Coopers & Lybrand* compels that restrictive interpretation. Even where all four factors are satisfied, ordinarily interlocutory appeal is barred.

**[5]** Where there really is very strong reason for interlocutory correction of a district court error, even though the case falls within no exception from the final judgment rule, we can use mandamus. Beyond that, it is a rare district court case indeed that can be interrupted by an appeal if it does not fall within a statutory exception to the statutory final decision rule. The interlocutory appeal in this case is not the albino black bear that *Gillespie* excepts from the "final decision" requirement, so this interlocutory appeal must be dismissed for lack of jurisdiction.

APPEAL DISMISSED.