# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 9, 2008

## MELVIN RUSSELL v. STATE OF TENNESSEE

**Direct Appeal from the Lauderdale County Circuit Court**
**No. 7893     Joseph H. Walker III,  Judge**

---

**No. W2007-01746-CCA-R3-PC  - Filed February 9, 2009**

---

The petitioner, Melvin Russell, originally pleaded guilty to possession of .5 grams or more of cocaine with intent to deliver.  He received a sentence of sixteen-years imprisonment to be served concurrently to an unrelated nineteen-year term of imprisonment he was already serving.  He now appeals the Lauderdale County Circuit Court's denial of post-conviction relief, and presents the following issues, as stated in his brief, for our review: (1) "Did trial counsel render ineffective assistance by failing to move for an Interlocutory Appeal of the trial court's ruling denying the Petitioner's Motion to Suppress Evidence?" and (2) "Did trial counsel's failures to render effective assistance improperly induce the Petitioner to enter his guilty plea such that his decision to enter the guilty plea, and thus, the plea itself, was involuntarily made?"  Following our review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Scott A. Lovelace, Ripley, Tennessee (at sentencing), and Ryan B. Feeney, Selmer, Tennessee (on appeal) for petitioner, Melvin Russell.

Robert E. Cooper, Jr., Attorney General and Reporter; and Rachel E. Willis, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Facts**.  On July, 6, 2006, the petitioner pleaded guilty to possession of .5 grams or more of cocaine with intent to deliver.  The petitioner was sentenced to sixteen-years imprisonment which, as part of his plea agreement, was to be served concurrently to an unrelated sentence of nineteen-years imprisonment that the petitioner was already serving.  There was no direct appeal filed.

On March 5, 2007, the petitioner filed a pro se petition for post-conviction relief. The petitioner's issues included: (1) "whether trial counsel was effective" and (2) "whether the trial court improperly allowed illegally obtained evidence." On March 23, 2007, the post-conviction court ordered the appointment of counsel and set the petition for a hearing. On April 23, 2007, an amended petition for post-conviction relief was filed incorporating the original petition, but additionally alleging that trial counsel was ineffective because he (1) coerced the petitioner into pleading guilty; (2) failed to properly advise the petitioner of the law; and (3) failed to timely file an appeal of the decision of the trial court denying the motion to suppress.

After the hearing on the petition, the post-conviction court denied the petitioner relief by written order on July 2, 2007, finding, among other things, that the petitioner failed to establish the factual allegations contained in his petition by clear and convincing evidence. A timely notice of appeal was then filed to this court.

**A. Guilty Plea Hearing**: On July 6, 2006, the petitioner pleaded guilty to possession of .5 grams or more of cocaine with the intent to deliver. The transcript of guilty plea colloquy was introduced at the post-conviction hearing. The prosecutor stated the following facts in support of the guilty plea:

> Your Honor, in Docket Number 7893, State of Tennessee versus Melvin Earl Russell. Your Honor, the defendant is indicted here today for possession Schedule II controlled substance, cocaine or cocaine base, with the intent to deliver point five grams or more.
>
> He's here today to plead to the indictment as he is so charged, as a multiple offender, at a range to be imposed by the Court anywhere from twelve to twenty years at 35 percent. The State would be recommending that that sentence in 7893 be concurrent with Docket Number 7449 and also 7951, as indicated on the Judgement [sic] form.
>
> Your Honor, had the matter gone to trial, the State would have called Officer Willard Lane, who is a sheriff's deputy as well as a Halls Police Department officer. Officer Lane would have testified that he showed a photograph of Dontae -- I'm sorry -- of Melvin Russell that looked similar to that of Dontae Brown, who was wanted for questioning on a shooting case in Ripley, Tennessee; that Officer Norris, that [sic] was new to the department and new to Halls, Tennessee, did, in fact, see Dontae Brown, who he mistook for -- that he actually saw Melvin Russell that he mistook for Dontae Brown and wanted to ask him a few questions.
>
> Upon a stop of him on July 1, 2005, the defendant was evasive and walked away from the officer several different times, and then he tossed what appeared to be some drugs. The officer called for

backup and arrested the defendant at that time.

Drugs were found, were sent to the Tennessee Bureau of Investigation. Special Agent Jessica Marquez would have testified that what was sent to the TBI was actually 2.9 grams of cocaine.

In a search incident to arrest, Officer Norris would have testified that he recovered $411.80 from the defendant. Further testimony would have come out that the defendant was unemployed at the time and had no verification of how he got the money.

Immediately following the above recitation of facts, in the presence of the petitioner, defense counsel stated:

Your Honor, I represent [the defendant] in this matter, and I actually have been with him in this particular case since September of last year.

In September of 2005 we had a preliminary hearing in General Sessions Court, at which time the General Sessions Court dismissed this matter. Mr. Russell was nonetheless indicted in October of 2005.

And in February of this year, the Court may recall, we had a suppression motion hearing where the Court heard some of the facts and circumstances of the stop, which we believed at the time, and still for purposes of appeal had this matter gone forward, may have been an unconstitutional and illegal stop.

In any event, I prepared for trial in this matter. We did subpoena Dontae Brown to be present today, along with some other witnesses, regarding the credibility of the officers. I have received all the discovery from the State, including the booking sheet, the lab report, and other documents that indicate the proof in this matter.

I have been over all of this with [the defendant], and after several rounds of negotiation between [the defendant] and the State, we have arrived at this agreed-upon guilty plea arrangement, whereby [the defendant] will waive his right to trial and plead guilty to possession of Schedule II controlled substance with intent to deliver more than point five grams, a Class B felony, as a multiple offender, which he understands carries a range of possible punishment from twelve to twenty years at 35 percent.

[The defendant] is currently serving a sentence in Docket Number -- a total cumulative sentence in Docket Numbers 7449 and

3

7551 of nineteen years, and the State has agreed to run whatever sentence he gets within this range concurrent with those prior sentences.

And based upon that agreement of the State, [the defendant] is willing to waive his right to a trial and pleads guilty in this matter.

I have explained to him, of course, his right to plead not guilty and have a jury trial, which we are prepared for today if we had gone forward, and his right to have counsel cross-examine and confront the witnesses against him, to put on witnesses and proof in his own behalf, and that he could take the stand and testify if he chose to do so, but that no one could force him or compel him to testify against himself. I've also advised him of his rights to appeal in this matter.

He wishes to waive all those rights and, based upon the agreement with the State, enter a plea of guilty to the indicted offense.

The trial court then engaged in a voir dire examination of the petitioner in which the petitioner stated that he wanted to waive his right to a trial by jury, enter a plea of guilty, and waive his right to appeal the conviction. The petitioner also agreed that he signed a form acknowledging that he understood his rights and that by entering a plea of guilty he was waiving those rights. After the trial court explained the consequences of the petitioner's waiver of his rights, the following exchange occurred:

THE COURT: [Defense Counsel] has been representing you while these charges have been pending. Are you satisfied with that representation?

THE PETITIONER: Yes, sir.

THE COURT: Do you feel like you've had enough time to meet with an attorney and to discuss this case and any defense you might have to these charges?

THE PETITIONER: Yes, sir.

THE COURT: . . . . Did anybody force you to enter a plea?

THE PETITIONER: No, sir.

THE COURT: Your willingness, then, to enter this plea is the result of talks you've had with your attorney, and your attorney with the district attorney working out this concurrent sentencing arrangement, and because you are, in

4

fact, guilty of this offense; is that correct?

THE PETITIONER: Yes, sir.

Based on the above exchanges, the trial court determined the petitioner was competent to enter the guilty plea and accepted his plea of guilty to the charged offense.

**B.  Post-Conviction Hearing**.  At the post-conviction hearing, the petitioner stated that other than court appearances, trial counsel only met with him face-to-face once.  He stated that trial counsel did not explain his appellate rights, "never advised [him] that [he]  had the right to appeal the denial of [his] suppression hearing," and "never discussed anything with [him] about the law." The only discussions the petitioner recalled having with counsel concerned "how much time [he] was facing." The petitioner further testified that he requested trial counsel to file an appeal from the suppression hearing which trial counsel did not do.

The petitioner admitted on cross-examination that trial counsel wrote him several letters and sent him requested information in response to the petitioner's letters and requests for information. The petitioner specifically stated, "[trial counsel] responded to the one about where I told him to appeal the denial of my suppression hearing, but he only told me that he wasn't.  He told me there was no reason."

Counsel testified that he had been in private practice as a defense attorney for eleven years. He had previously represented the petitioner and was retained to represent him in this case.  Counsel advised that he met with the petitioner "numerous times . . . from the time [counsel] was retained in the General Sessions Court, throughout the time that [counsel] represented him in the Circuit Court."  Counsel recalled writing the petitioner "thirteen separate letters of correspondence."  He also filed a motion to suppress as well as several other pretrial motions.  Exhibit number two was entered as evidence at the hearing and consisted of eight opinions from the Tennessee Supreme Court and the Court of Criminal Appeals. Counsel stated it represented the research he did on the case, some of which was also sent to the petitioner. Once the motion to suppress was denied, counsel testified that "the District Attorney's Office wasn't really making [him] many offers at all, and [he] just assumed [they] were going to have to try it."  He explained, from February to July of 2006, he was preparing for trial.  However, a week or two before trial, the State offered to settle the case, "effectively for concurrent sentencing with what [the petitioner] was already serving, which [he] thought was a very generous offer."

In order to appeal the denial of the motion to suppress, counsel testified that he explained to the petitioner both verbally and through written correspondence that he had to "either plead [the petitioner] guilty with a certified question of law, or [counsel] had to go ahead and  go to a jury trial and get a final judgment" from which he could then appeal.  In a letter dated February 28, 2006, counsel wrote to the petitioner and directly responded to the petitioner's inquiry about an "interlocutory appeal."  Counsel advised the petitioner and wrote:

5

[T]here is no reason to file an application for permission to file an interlocutory appeal from the order of the Circuit Court denying the Motion to Suppress. I have preserved all of the testimony on the record for an appeal after a final judgment in this matter, if necessary. You will be able to appeal the denial of the Motion to Suppress if the jury ultimately finds you guilty of the indicted offense.

The post-conviction court denied the petition by written order. The court's order detailed the guilty plea colloquy and noted that the petitioner was "21 years of age at the time" and was "taking GED classes in TDOC." The petitioner stated "he had [gone] over the plea form and understood what he was doing." The post-conviction court further noted the testimony at the post-conviction hearing and "[t]he proof at the suppression hearing was that an officer observed the petitioner throw an object where the bag of cocaine was found." The post-conviction court determined that trial counsel was not ineffective by not appealing this issue and that the petitioner failed to "demonstrate a reasonable probability that, but for counsel's deficiency, he would have insisted upon proceeding to trial." The petitioner then filed a timely notice of appeal.

**Standard of Review**. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). Our supreme court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotations and citations omitted). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id.; see also T.C.A. § 40-30-110(f) (2006). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C.Toof & Co., 833 S.W.2d 896, 901, n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> [T]he right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to

> representation encompasses the right to reasonably effective assistance, that
> is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal citations and quotation omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984) and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim[, and] a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below an objective standard of "reasonableness under prevailing professional norms." Id. at 369 (quoting Strickland, 466 U.S. at 688). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

**I. Failure to File an Interlocutory Appeal.** The petitioner claims counsel was ineffective because he failed to file an interlocutory appeal after the denial of his motion to suppress. In response, the State argues that the petitioner's claim fails because he has not demonstrated that counsel's performance was deficient nor has he carried his burden of proof to establish that he was prejudiced by trial counsel's decisions. We agree with the State.

In this case, the record shows that counsel thoroughly researched the law regarding the circumstances under which an application for permission to file an interlocutory appeal will be granted. Counsel properly preserved the suppression issue in the trial court and correctly concluded that the petitioner would be able "to appeal the denial of the motion to suppress if the jury ultimately found [the petitioner] guilty of the indicted offense." In arguing "had trial counsel filed a Motion for Interlocutory Appeal . . . this single issue *would* have been dispositive of the case," the petitioner misinterprets the standard of review for an interlocutory appeal. (Emphasis in Appellant's Brief). The United States Supreme Court has cautioned that interlocutory review of pretrial rulings can create piecemeal appellate litigation and the "encouragement of delay [that] is fatal to the vindications of the criminal law." State v. Gilley, 173 S.W.3d 1, 5 (Tenn. 2005) (grant of interlocutory appeal for review of pre-trial motion was error because the issue was properly preserved for direct appeal) (quoting Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540 (1940)). Appellate courts "disfavor[]," interlocutory appeals to review pretrial orders or rulings entered before a final judgment, particularly in criminal cases. Id. This is the reasoning behind the requirement that the order from which the appeal is sought be dispositive of the case. Tenn. R. App. P. 9(a). Thus, an interlocutory appeal is granted only if the order from the denial of the motion actually, not potentially, is dispositive of the case.

Moreover, "[t]his court will not grant an application for interlocutory appeal if the interlocutory order of the trial court is merely a step towards the disposition of the case; and the appellant can raise the issue on a direct appeal if he is convicted." Kenneth Weems v. State, No. W1999-00033-CCA-R3-PC, 2000 WL 140462, at * 2 (Tenn. Crim. App. at Jackson, Feb. 2, 2000) (citing State v. Gawlas , 614 S.W.2d 74 (Tenn. Crim. App. 1980) (concluding that failure of trial counsel to timely file an interlocutory appeal of denial of motion to suppress is not deficient performance)). "A ruling on a motion to suppress or exclude evidence is clearly a step taken in the disposition of a criminal case on the merits; and this court will not grant an application for an interlocutory appeal to review the judgment of the trial court denying such a motion." Id. At the hearing, the petitioner's testimony on this issue was that counsel explained to him that there was "no reason" to file an interlocutory appeal. The State introduced written correspondence that counsel mailed to the petitioner detailing the interlocutory appeal process as it applied to the petitioner's case. Given this record and the authority governing this issue, the petitioner has failed to demonstrate that counsel's performance was in any way deficient or that he was prejudiced as a result. Accordingly, he is not entitled to post-conviction relief.

II. **Guilty Plea**. Next, the petitioner argues counsel's deficient performance resulted in an involuntary guilty plea. The State counters that the petitioner's claim amounts to no more than "a conclusory statement" because he fails to support it with any evidence from the record. Thus, the petitioner has failed to demonstrate that counsel's performance was deficient or that he was prejudiced as a result. We agree with the State.

Aside from cited authority, the only statements the petitioner makes in his brief with regard to this issue are the following two sentences: "Petitioner testified at the hearing below that, had he been properly represented, he would have proceeded to trial. Prejudice is demonstrated by Petitioner's testimony that, but for his lack of effective counsel, he would not have entered a plea."(Appellant's Brief at 14 ). Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court. See Tenn. Ct. Crim. App. R. 10(b); State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). Despite the petitioner's failure to reference the record, we have reviewed the entire record in this case and cannot find any testimony from the petitioner complaining that he would not have pleaded guilty but for counsel's advice. Accordingly, we conclude the post-conviction court properly denied the petition for post-conviction relief.

**Conclusion**. Based on the foregoing, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE