[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10945

_____

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY,

Plaintiffs-Counter Defendants-Appellants,

*versus*

GLASSCO, INC.,

Defendant-Counter Claimant-Appellee,

JASON WILEMON,
JOHN BAILEY,
ANDREW VICTOR,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-01950-KKM-JSS

———————————————

Before NEWSOM, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

We have appellate jurisdiction over "all final decisions of the district courts of the United States."  28 U.S.C. § 1291.  The question in this case is whether the district court made a "final decision." It did not.  The district court denied summary judgment to the extent that Geico General Insurance Company alleged that Glassco, Inc. made misrepresentations that amounted to fraud "independent of" Glassco's violations of the Florida Motor Vehicle Repair Act.[1]  Geico tried to convert this nonfinal decision into a final decision by filing an amended complaint that removed the fraud allegations that were independent of the Repair Act violations.  But Geico didn't remove enough.  The fraud allegations are still alleged in the amended complaint.  Because they are, and the district court

———————————————

[1] The three plaintiffs are Government Employees Insurance Co., GEICO Indemnity Co., and Geico General Insurance Company.  The defendants are Glassco, Inc. and its three owners:  Jason Wilemon, John Bailey, and Andrew Victor.  For ease of reference, we refer to the plaintiffs collectively as "Geico" and to Glassco, Inc. and its owners collectively as "Glassco."

denied summary judgment as to these fraud allegations, there is no final decision for Geico to appeal. Thus, we must dismiss this appeal for lack of appellate jurisdiction.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *The Complaint*

Jason Wilemon, John Bailey, and Andrew Victor owned Glassco, a windshield repair shop. Except Glassco didn't have any employees that repaired windshields. Instead, Glassco ran its business almost entirely through independent contractors. Some of those independent contractors were "safety inspectors," who would roam residential neighborhoods and parking lots looking for broken windshields. The others were "installers," who'd then service the windshields.

Glassco offered quite a bargain. Under Florida law, an insurer isn't allowed to charge its insureds a deductible for windshield repairs. *See* Fla. Stat. § 627.7288. An insurer has thirty days after proof-of-loss statements have been completed to either pay for the repairs or give a reasonable explanation for why it isn't paying. *See id.* § 626.9541(1)(i)(3)(e)–(f). If, within thirty days, the insurer doesn't pay or fails to give a reasonable explanation for not paying, a repair shop can sue the insurer. *See id.* §§ 624.04, 624.155(1)(a)(1). So Glassco didn't charge its customers anything. Glassco's estimates and customer forms reflected that it charged "zero dollars." Glassco would instead bill its customers' insurers.

This arrangement has caused friction between Glassco and its customers' insurers. For years, Glassco didn't make a profit—and, in fact, operated at a loss—because it was buried in "legal expenses." Glassco has been engaged in litigation with its customers' insurance companies. This case is another one of those disputes. In this case, Geico sued Glassco and its three owners. The crux of Geico's case is that Glassco violated the Repair Act and that Glassco committed fraud. Glassco has collected $700,000 or so from Geico. Geico wants its money back.

In its complaint, Geico asserted eight claims: a declaratory judgment claim seeking a declaration that Glassco violated the Repair Act and that Geico had no duty to pay pending claims (count one); a federal racketeering claim (count two); a federal racketeering conspiracy claim (count three); a Florida Deceptive and Unfair Trade Practices Act claim (count four); a Florida racketeering claim (count five); a common law fraud claim (count six); an unjust enrichment claim (count seven); and a Repair Act claim (count eight).

Geico's eight-count complaint can really be broken down into two theories. Geico's first theory was that it didn't have to pay for the windshield repairs because Glassco violated the Repair Act. For example, the Repair Act generally requires repair shops: to get a customer's "consent" before using an independent contractor, see id. § 559.920(14); to "present to the customer a written notice" stating that the customer is "entitled to a written estimate" if the "cost of repair work will exceed $100," id. § 559.905(2); and to "provide each customer, upon completion of any repair, with . . . an

invoice," *id.* § 559.911.  According to Geico, Glassco didn't do any of these things.

Geico's second theory was that it didn't have to pay for the windshield repairs, regardless of Glassco's non-compliance with the Repair Act, because Glassco engaged in what amounted to fraud.  For example, Geico alleged that Glassco inflated the hours independent contractors worked, completed unnecessary windshield repairs, charged for unperformed repairs, and forged insureds' signatures.  Geico also alleged that Glassco's assignments were invalid and so Glassco's insurance claims were fraudulent.  Glassco's assignment agreements represented that the customers were assigning their insurance benefits to Glassco "in consideration of *Glassco Inc.* agreeing to repair and/or replace glass."  But, according to Geico, *Glassco* never did the repairs—independent contractors did—and so Glassco had no valid assignments.  This conduct amounted to fraud, under Geico's second theory, even putting the Repair Act aside.

## Motion to Dismiss

Glassco moved to dismiss Geico's eight-count complaint.  The district court's decision was split.  First, the district court granted the motion to dismiss as to Geico's Repair Act claim (count eight).  The district court found that only a repair shop's "customer" can sue under the Repair Act, and that since Geico was an insurer, not the repair shop's customer, Geico didn't have a cause of action under the Repair Act.  Second, the district court denied the motion to dismiss as to the remaining seven counts.  In doing

so, the district court recognized that Geico's claims rested on alleged misrepresentations that fell into two theories: "misrepresentations constituting fraud regardless of Glassco's non-compliance with the Repair Act and misrepresentations that, according to Geico, constitute fraud because of Glassco's non-compliance with the Repair Act." Both theories survived Glassco's motion to dismiss.

### Summary Judgment

That takes us to summary judgment. Both sides moved for summary judgment. What's important for our purposes is that the parties stuck to the two theories that they'd used to frame the case to that point. Glassco, for instance, distinguished between (1) "violations of the" Repair Act and (2) "misrepresentations that amounted to fraud unconnected with the violations of the" Repair Act.

The district court's order left the parties with "mixed results." First, the district court entered summary judgment for Glassco on four of Geico's seven remaining claims: the declaratory judgment claim (count one), the federal racketeering claim (count two), the federal racketeering conspiracy claim (count three), and the Florida racketeering claim (count five). Second, the district court concluded that Geico's other three claims would survive to *some* extent. Those three claims were Geico's Florida Deceptive and Unfair Trade Practices Act claim (count four), its common law fraud claim (count six), and its unjust enrichment claim (count seven).

But to what extent did those claims survive?  The district court divided each claim into two to correspond to Geico's two theories:  "Geico's [theory] based on alleged violations of the Repair Act" and "Geico's [theory] of deceptive conduct apart from the Repair Act."  The theory based on Repair Act violations included, for example, Glassco's failure to "provide[] written estimates to insureds."  The theory based on wrongful conduct apart from the Repair Act included, for example, "inflat[ing] the [contractors'] hours," performing "unnecessary windshield repairs," "charg[ing] for unperformed windshield repairs," and "falsely represent[ing] benefit assignments."  The district court entered summary judgment as to the first theory (the Repair Act violations).  But the district court denied summary judgment as to this second theory (fraud apart from the Repair Act).  So those claims remained.

### Motion to Amend

With the core of its case on the cutting room floor, Geico moved to amend its complaint so that it could take an immediate appeal.  Geico explained that, after summary judgment, "only a small portion of [its] claims remain[ed]."  Geico recognized that its claims "fell into two categories."  Its claims were dismissed "to the extent that they were based on [Glassco's] alleged failure to comply with the Repair Act."  Its claims survived to the extent that they were based on fraud apart from the Repair Act.  Geico didn't want to "proceed to trial on this small portion of [its] case, and instead [wanted] to seek immediate appellate review of the [district court's] decisions on the motions to dismiss and summary

judgment motions." And so Geico moved to amend so that it could dismiss the portions of its case that remained at that point.

The district court granted that motion. The district court said that it had resolved the "heart" of Geico's case. The district court noted that, at summary judgment, it held that Geico "could not bring . . . legal claims premised on Repair Act violations" but "could bring those claims based on ordinary fraudulent conduct apart from the Repair Act." The district court said that it "reviewed [Geico's] proposed amended complaint and concluded that [the amended complaint] appropriately drop[ped] the portions of [Geico's] remaining claims." The district court granted leave to amend and "direct[ed] the clerk . . . to enter judgment in [Glassco's] favor based on [its] previous dismissal and summary judgment orders." So the clerk entered judgment for Glassco. And Geico timely appealed.

## STANDARD OF REVIEW

"We review de novo our appellate jurisdiction." *United States v. Cody*, 998 F.3d 912, 914 (11th Cir. 2021) (cleaned up).

## DISCUSSION

We lack jurisdiction over this appeal. "As a court of limited jurisdiction, we may exercise appellate jurisdiction only where 'authorized by Constitution and statute.'" *Jenkins v. Prime Ins. Co.*, 32 F.4th 1343, 1345 (11th Cir. 2022) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). By statute, Congress has limited our jurisdiction to "final decisions of the district

courts." 28 U.S.C. § 1291; *see also Freyre v. Chronister*, 910 F.3d 1371, 1377 (11th Cir. 2018) ("Generally speaking, our [c]ourt may only hear appeals from a district court's final order.").

"To constitute a final decision, the district court's order generally must adjudicate all claims against all parties[.]" *Jenkins*, 32 F.4th at 1345 (quoting *Corsello v. Lincare, Inc.*, 276 F.3d 1229, 1230 (11th Cir. 2001)). In this case, though, some of Geico's claims—the ones that alleged fraud apart from the Repair Act—survived summary judgment. The district court, in other words, did *not* adjudicate all claims against all parties. So how could we have a final order?

That takes us to *Perry v. Schumacher Group of Louisiana*, 891 F.3d 954 (11th Cir. 2018). In that case, we explained how a plaintiff may take an appeal when some of the plaintiff's claims remained pending. There, the district court had disposed of seven of the plaintiff's eight claims, leaving just one claim for trial. *Id.* at 955–56. The plaintiff "did not wish to proceed to trial on one single claim" and instead wanted "immediate appellate review." *Id.* at 958. The plaintiff tried doing so by voluntarily dismissing her one remaining claim under Federal Rule of Civil Procedure 41(a)(1). *Id.* at 957. We explained that this didn't cut it because rule 41(a)(1) "permits voluntary dismissals only of entire actions, not claims." *Id.* at 956 (cleaned up).

The right way to appeal, we said, was to amend the complaint under rule 15 to remove the surviving claim so that only the claims that had been disposed of remained in the case. *Id.* at 958.

We explained, in other words, that the "easiest and most obvious" way to appeal was to "seek and obtain leave to amend the complaint to eliminate the remaining claim, pursuant to [r]ule 15." *Id.* The plaintiff "wished to seek immediate appellate review of the [d]istrict [c]ourt's disposition of seven of her eight claims." *Id.* "Had she amended her complaint to remove that [one remaining] claim, the [d]istrict [c]ourt would have entered final judgment against her and she could have appealed everything at once." *Id.* "In short, [r]ule 15 was designed for situations like this." *Id.*

Geico tried to follow the process we set out in *Perry* but came up short. Geico moved "to amend [its] [c]omplaint to drop the small portion of [its] claims that remain[ed] to be tried, and [sought] entry of final judgment based on the [district court's] disposal of [Geico's] other claims." This is the path to an immediate appeal that we laid out in *Perry*. But, through no fault of the district court, which had to slog through a 76-page, 152-paragraph, shotgun complaint, Geico never actually dropped the portion of its claims that remained to be tried following summary judgment. That's because Geico continued to allege that Glassco engaged in fraud even putting its Repair Act violations to the side. These were the same claims that survived summary judgment.

We'll give a couple of examples. First, the district court denied summary judgment to the extent that Geico's claims rested on "misrepresentations that [were] not based on Repair Act violations." This included Geico's allegations that Glassco "(1) inflate[d] the hours expended by the independent contractor to repair the

windshield, (2) list[ed] unnecessary windshield repairs, (3) charge[d] for unperformed windshield repairs, and (4) forge[d] insureds' signatures on work orders and on the assignment of benefits." Yet Geico continued to allege (in its amended complaint) that Glassco sought reimbursement for "phony, unnecessary, unlawful, and otherwise nonreimbursable windshield replacement services." D.E. 184 ¶ 1; *see also id.* ¶¶ 36, 48. And these allegations were incorporated into Geico's remaining counts. In other words, after summary judgment, Geico's claims survived to the extent that they relied on "unnecessary" repairs, "inflate[d]" hours, and "unperformed" work. And the amended complaint continued to allege the same "unnecessary," "illusory," and "phony" services.

Second, the district court also denied summary judgment as to Geico's invalid assignment theory. In denying summary judgment as to Geico's common law fraud claim, for example, the district court pointed to Geico's allegation that "Glassco falsely represented benefit assignments." But that same allegation also appeared in the amended complaint. In its amended complaint, Geico continued to allege that Glassco "never obtained valid assignments of insurance benefits." *Id.* ¶ 2; *see also id.* ¶¶ 5, 64, 92, 95, 123, 137. Geico alleged that Glassco's assignment agreements represented that the customers were assigning their insurance benefits "in consideration of *Glassco Inc.* agreeing to repair and/or replace glass." But *Glassco* never did the repairs, Geico alleged, and so Glassco had no valid assignments in the "first instance," even

putting the Repair Act to the side.  Geico continues to defend this claim—which withstood summary judgment—on appeal.

Because Geico failed to remove from its complaint the claims that survived summary judgment, the summary judgment "did not resolve all claims against all parties" and "issued no [appealable] final decision within the meaning of [section] 1291." *Jenkins*, 32 F.4th at 1346–47 (dismissing the appeal for lack of appellate jurisdiction); *see also, e.g.*, *Corsello*, 276 F.3d at 1230 ("In this case, the district court did not adjudicate [the plaintiff's] claims against [one of the defendants], and thus, there is no appealable final decision."); *Hood v. Plantation Gen. Med. Ctr., Ltd.*, 251 F.3d 932, 934–35 (11th Cir. 2001) (dismissing an appeal for lack of appellate jurisdiction where "one claim remained for one of the parties"). There's no final order, and so we lack jurisdiction.

In response, the parties make two arguments—both unconvincing.  First, the parties suggest that Geico's allegations about phony charges, unnecessary repairs, and invalid assignments really go to Repair Act violations.  But that's not how the parties litigated this case from the beginning.  At the motion to dismiss stage, the district court recognized that Geico's claims fell into two theories: one alleged "fraud because of Glassco's non-compliance with the Repair Act" and the other alleged "fraud regardless of Glassco's non-compliance with the Repair Act."  The district court explained that this second category—fraud independent of the Repair Act—included:

> Geico's allegations (1) that [Glassco] submit[ted] claims that inflate[d] the hours expended by the independent contractor[s] to repair the windshield[s], (2) that [Glassco] submit[ted] claims for unnecessary windshield repair[s], (3) that [Glassco] submit[ted] claims for unperformed windshield repair[s], and (4) that [Glassco] forge[d] the insured's signature[s] on work orders and on the assignment of benefits.

The district court treated these claims *separately* from the claims based on Repair Act violations.

At summary judgment, the parties also treated Geico's two theories separately. The district court's summary judgment order did the same, drawing a distinction between claims that relied on Repair Act violations (like failing to provide written estimates) and claims that stood apart from the Repair Act (like inflating hours, performing unnecessary repairs, charging for unperformed repairs, forging signatures, and obtaining invalid assignments).

And, in moving to amend, Geico acknowledged that the district court had dismissed its claims "to the extent that they were based on [Glassco's] alleged failure to comply with the Repair Act." But this meant that Geico's claims that *didn't* rely on the Repair Act survived. These remaining claims included, Geico explained, its allegations about "inflated hours, unnecessary [and] illusory repairs, or forged claims." In granting Geico's motion to amend, the district court relied on this same division. The district court noted that, at summary judgment, it concluded that Geico "could not

bring other legal claims premised on Repair Act violations" but "could bring those claims based on ordinary fraudulent conduct apart from the Repair Act (e.g., misrepresentations regarding inflated hours, unnecessary repairs, forged claims, etc.)."

But now, for the first time on appeal, the parties say that this division doesn't really exist. The parties argue that Geico's claims about inflated hours, unnecessary repairs, fraudulent charges, forged signatures, and invalid assignments actually *also* constitute Repair Act violations. And so they argue that the presence of these allegations in Geico's amended complaint won't get in the way of our jurisdiction. They say that these allegations—which had previously gone toward the part of the case that survived (fraud apart from the Repair Act)—now go to the part of the case that was dismissed (claims based on Repair Act violations). But the parties can't transform their theories at the eleventh hour to manufacture appellate jurisdiction. *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 513 (11th Cir. 2019) (explaining that a party "may not switch theories and transform [its] position on appeal"); *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) ("It is well established in this circuit that, absent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.").

Second, the parties argue that the district court directed the entry of "judgment." But that isn't enough. "[I]n evaluating whether a district court's order is final and appealable, we look to the substance of the order—not the label." *Young v. Prudential*

*Ins. Co. of Am.*, 671 F.3d 1213, 1215 (11th Cir. 2012). In other words, in assessing finality, we must look to "what the district court has done." *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1243 (11th Cir. 2014). Here, the district court "direct[ed] the clerk . . . to enter judgment in [Glassco's] favor based on [the district court's] previous dismissal and summary judgment orders." But the district court didn't direct "final judgment." Nor did it direct judgment as to "all claims." Instead, it told us to look to its dismissal and summary judgment orders. And those orders never got rid of Geico's claims based on the second theory that Glassco committed fraud apart from the Repair Act.

We have repeatedly held that the entry of judgment is not enough to supply jurisdiction—even when that judgment is labeled a "final" judgment—where a district court failed to dispose of all claims. *See, e.g.*, *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1297 (11th Cir. 2001) (finding that a document labeled "Final Judgment" was not "a final judgment as to all of the claims and counterclaims in the case"); *Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 (11th Cir. 1996) (holding that "[t]he entry of summary *final* judgment in th[e] case" didn't result in a final order because "[t]he summary judgment did not even purport to adjudicate [the defendant's] other affirmative defenses"). Looking to the substance, there's no final order here. We lack jurisdiction.

## CONCLUSION

Dismissing this appeal may not be a satisfying result. The parties want us to resolve the Repair Act issues that are driving this

case.  So does the district court.  And so do we.  That will happen soon enough.  But we can't exercise jurisdiction over this appeal simply because the alternative—sending this case back to the district court—may be inconvenient or inefficient.  *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (jurisdiction "is conferred and defined by statute" but it "cannot be created by the consent of the parties nor supplanted by considerations of convenience and efficiency" (cleaned up)).

And Congress's decision to limit our jurisdiction to final decisions of the district courts does not reflect "merely technical conceptions of 'finality.'"  *Catlin v. United States*, 324 U.S. 229, 233 (1945).  "Finality as a condition of review is an historic characteristic of federal appellate procedure.  It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all."  *Cobbledick v. United States*, 309 U.S. 323, 324–25 (1940).

Beyond its historical underpinnings, finality also "serves a number of important purposes."  *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981).  It "further[s] . . . judicial efficiency, for example, and the sensible policy of avoiding the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise."  *Will v. Hallock*, 546 U.S. 345, 350 (2006) (cleaned up).  "Permitting piecemeal appeals" also "undermine[s] the independence of the district judge, as well

as the special role that individual plays in our judicial system." *Firestone Tire*, 449 U.S. at 374.

Indeed, in this case, Geico presses claims on appeal that the district court never dismissed (and that remain in this case). Those claims may give Geico all the relief that it's after. By dismissing this appeal today, we vindicate finality as the historic characteristic of federal appellate procedure, serve the important interests of judicial efficiency, and promote the sensible policy of avoiding piecemeal appeals. Even if not in this case, then in the thousands of appeals we decide each year.

**APPEAL DISMISSED.**