[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10155

No. 23-10901

_____

In Re: Grand Jury Investigation (SEALED)

_____

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-03031-JPB

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and HULL, Circuit
Judges.

WILLIAM PRYOR, Chief Judge:

These consolidated appeals require us to decide whether we
have jurisdiction to review an investment company's objections to
orders that compel it and other third parties to produce documents

2                          Opinion of the Court

in response to grand jury subpoenas without standing in contempt. The subpoenas seek documents about a tax-shelter scheme from an investment company and an accounting firm. The investment company argued that the attorney-client privilege shields the documents. After the government filed motions to compel, the district court denied the investment company's intervention and ordered the accounting firm to comply with the subpoena. It also ruled that the crime-fraud exception barred the investment company's privilege claims and ordered the investment company, the accounting firm, and other third parties to produce relevant documents. Because the investment company could have raised all its privilege arguments on appeal had it stood in contempt, we dismiss these appeals for lack of jurisdiction.

## I. BACKGROUND

These appeals revolve around two grand jury subpoenas issued to a pair of unindicted entities allegedly connected to an illegal tax-shelter scheme. The grand jury investigation concerns a tax-shelter scheme. Several of the conspirators have been indicted and convicted or pleaded guilty during the pendency of the contested subpoenas. But the government still seeks to enforce the subpoenas to gather additional evidence. The first subpoena requested documents from an accounting firm where several conspirators worked during the scheme, and the second subpoena requested documents from an investment company whose executive facilitated the scheme. The investment company argues that the attorney-client privilege shields all the documents that the government seeks. The accounting firm does not raise any privilege claims itself,

but it has so far refused production at the investment company's request. These proceedings are under seal, and the details of the underlying investigation do not affect the outcome.

We proceed in two parts. First, we describe the intervention order that denied the investment company's motion to intervene and compelled the accounting firm to produce withheld documents. Second, we describe the crime-fraud order that compelled the investment company, the accounting firm, and three other parties to produce withheld documents.

### A. Intervention Order

In June 2021, the grand jury issued a subpoena to the accounting firm that sought records related to individuals and entities involved in the tax-shelter scheme. In October 2021, the government filed a motion to compel the accounting firm to produce around 2,700 documents that it had withheld. Although the accounting firm conceded that it did not have an attorney-client relationship with any of the attorneys covered by the subpoena, it withheld the documents based on privilege claims by third parties including the investment company and one of its executives.

In January 2022, the government and the accounting firm submitted a stipulation and consent order that proposed that potential third-party privilege holders should review some of the records to "provide a privilege log, and participate in this litigation if they desire to do so." The district court entered that order the next week.

4                              Opinion of the Court

In April 2022, the investment company timely filed a privilege log for the records that the accounting firm had provided. A week later, the investment company timely filed a motion to intervene and memorandum of law in support of its motion. It requested intervention under Federal Rule of Civil Procedure 24 to assert attorney-client privilege and work-product protections. The investment company also argued that it had not waived any privilege and that all privilege challenges should be handled on a document-by-document basis. The government responded that the withheld documents were not privileged because the accounting firm "was not in an attorney-client relationship with any of the lawyers on the e-mails."

In January 2023, the district court denied the investment company's motion to intervene and granted the government's motion to compel the accounting firm to produce the subpoenaed documents. With the investment company excluded from the proceeding and the accounting firm not asserting privilege itself, the district court granted the motion to compel because it was "unopposed." The court ended its order as follows: "The Clerk is **DIRECTED** to close this case." The investment company timely appealed this intervention order.

### B. *Crime-Fraud Order*

In July 2021, the grand jury subpoenaed the investment company for the same kinds of records that it had requested from the accounting firm. Of note, in May 2021, the government had reassured the investment company in writing that "[one of its

executives] is a target of the investigation, not [the investment company]." The investment company moved to quash this subpoena, but the district court denied its motion.

In November 2022, the investment company told the government that it would take another six months to complete the production and furnish the remaining privilege logs. The government informed the investment company that it intended to file a crime-fraud motion to access the documents that the investment company claimed were privileged.

In December 2022, the government filed an *"Ex Parte* Motion for Crime-Fraud Finding and to Compel Production of Documents."* The government's ex parte motion identified twelve attorneys whose presence in communications should not trigger the attorney-client privilege. The government contended that records that included these twelve attorneys were not privileged because some communications did not involve legal advice, other communications that involved legal advice included third parties that destroyed confidentiality, and any remaining confidential communications that involved legal advice implicated the crime-fraud exception.

The government sought a broad crime-fraud or waiver ruling that would defeat the investment company's privilege claims for four categories of responsive documents. It sought access to records held by the investment company itself, the accounting firm as part of the subpoena dispute discussed above, two engineering firms owned by a targeted conspirator, and the government filter

6                              Opinion of the Court

team that serves as a middleman in the criminal proceedings by holding recovered documents until the court orders that they can be turned over to the government's prosecution team. The third parties gave copies of the relevant documents to the investment company to create privilege logs. None of the parties other than the investment company claimed privilege over the documents.

The district court granted the government's ex parte crime-fraud motion on the same day that it issued its intervention order related to the accounting firm's documents. It provided one sentence of reasoning for its decision: "It appearing that sufficient grounds and good cause exist to support the granting thereof, the United States' motion for crime-fraud finding and to compel production of documents is hereby **GRANTED**." Because all the proceedings related to this motion were ex parte, the district court directed the government to provide a redacted copy of its motion to the investment company, one of its executives, and the accounting firm. It compelled production of nearly every document that the government requested, with a few minor exceptions where it was not clear whether some documents held by the investment company involved one of the twelve attorneys. And it ordered the investment company to "complete production within fourteen days" and to "not withhold any communications that involve one of the Twelve Attorneys (identified in the motion) and which involve any aspect of [the tax-shelter scheme] or the crimes charged in the Superseding Indictment or crimes the grand jury continues to investigate."

The investment company moved for the district court to stay the order pending appeal. The district court granted the stay, and it granted the parties' joint motion to give the investment company access to the docket.

## II. STANDARD OF REVIEW

We review our appellate jurisdiction *de novo*. *Gov't Emps. Ins. Co. v. Glassco, Inc.*, 58 F.4th 1338, 1342 (11th Cir. 2023).

## III. DISCUSSION

"We have a threshold obligation to ensure that we have jurisdiction to hear an appeal, for 'without jurisdiction we cannot proceed at all in any cause.'" *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) (alterations adopted) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)). We have jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. To constitute a "final decision," an order must "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999) (citation and internal quotation marks omitted).

Orders related to "grand jury subpoenas are ordinarily not appealable final orders under section 1291." *In re Grand Jury Proc.*, 832 F.2d 554, 558 (11th Cir. 1987); *accord Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.*, 680 F.2d 743, 745 (11th Cir. 1982). By denying immediate review of these ancillary orders, this rule ensures "the expedient administration of criminal justice." *In re Grand Jury Proc. in Matter of Fine*, 641 F.2d 199, 201 (5th Cir. Unit A Mar. 1981). We

have recognized a few narrow exceptions that permit immediate appellate review of certain nonfinal orders. *See Doe No. 1 v. United States*, 749 F.3d 999, 1004 (11th Cir. 2014). But no exception to the final-judgment rule provides jurisdiction over these appeals. So we can express no opinion on the merits of any rulings by the district court—whether about intervention, the crime-fraud exception, or any other matter.

We divide our discussion into two parts. First, we explain why the investment company's failure to stand in contempt of the orders forecloses our jurisdiction over the investment company's objections about documents it must produce. Second, we explain why the *Perlman* exception—which provides jurisdiction if an intervenor claims privilege in response to an order directed to a party who is unlikely to stand in contempt itself—does not apply to the investment company's objections about documents the accounting firm, the two engineering firms, and the government filter team must produce.

### A. We Lack Jurisdiction over the Investment Company's Objections About Documents It Must Produce.

When a witness seeks to challenge a subpoena on appeal, he ordinarily must first stand in contempt. In *Cobbledick v. United States*, the Supreme Court held that a witness subpoenaed by a grand jury could not immediately appeal an order enforcing a subpoena unless he stood in contempt. 309 U.S. 323, 326–28 (1940). It explained that only when the witness faces the threat of "languish[ing] in jail" does his "situation become[] so severed from the

main proceeding as to permit an appeal." *Id.* at 328. This rule promotes finality without irreversibly barring review of a witness's claims. *See id.* at 326–28.

*United States v. Ryan* reaffirmed *Cobbledick* after the enactment of section 1291 in 1948. 402 U.S. 530, 532–33 (1971); *see also* Act of June 25, 1948, ch. 646, 62 Stat. 929 (codified as amended at 28 U.S.C. § 1291). *Ryan* explained that putting a witness who objects to a subpoena "to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt" remains necessary for "the administration of the criminal law." 402 U.S. at 533. Because the witness could "obtain full review of his claims before undertaking any burden of compliance with the subpoena," the Supreme Court ruled that the order denying the witness's motion to quash was not appealable. *Id.* at 533–34.

This rule applies to both witnesses who are a party and those who are not the target of the main proceeding. The investment company tries to distinguish *Cobbledick* on the ground that the recipients of the subpoenas in that decision were targets of the grand jury investigation who could appeal a later conviction. It maintains that it is not an indicted party in the criminal proceedings and that the government reassured it that "[one of its executives] is a target of the investigation, not [the investment company]." But *Cobbledick* suggested that this variation is a distinction without a difference. "[T]he requirement of finality will be enforced not only against a

party to the litigation but against a witness who is a stranger to the main proceeding," and "[t]his is so despite the fact that a witness who is a stranger to the litigation could not be party to an appeal taken at the conclusion of the main cause." *Cobbledick*, 309 U.S. at 326. Regardless of whether the investment company is a targeted party, its interlocutory appeals "encourage[] . . . delay," which "is fatal to the vindication of the criminal law." *Id.* at 325.

That the district court included language about the administrative status of the proceedings in one of its orders does not change this conclusion. The investment company argues that because the intervention order stated, "The Clerk is **DIRECTED** to close this case," it was an appealable final order. *See* 28 U.S.C. § 1291. It relies on the statement in *Mohawk Industries, Inc. v. Carpenter* that "[a] final decision is typically one by which a district court disassociates itself from a case," 558 U.S. 100, 106 (2009) (alteration adopted) (citation and internal quotation marks omitted), and it contends that the order evinced an intent to do so. But the investment company overreads the administrative statement by the district court. The instruction to the clerk to "close this case" did not transform a standard, unappealable discovery order into an appealable "final decision[]." 28 U.S.C. § 1291.

Because the investment company did not stand in contempt before it filed these appeals, we lack jurisdiction to review its objections about documents it must produce. As we explained in *In re Grand Jury Proceedings*, "orders denying motions to quash grand jury subpoenas are ordinarily not appealable final orders under

section 1291." 832 F.2d at 558. The investment company fails to explain why we should depart from this "longstanding precedent" as applied to the portions of the orders that compel it to produce documents itself. *In re Fed. Grand Jury Proc. (FGJ 91-9), Cohen*, 975 F.2d 1488, 1491 (11th Cir. 1992). For these documents, the investment company, as "[t]he subpoenaed party[,] can obtain review by refusing to comply with the subpoena and then contesting a contempt citation." *Grand Jury Proc.*, 832 F.2d at 558. Its failure to do so forecloses our jurisdiction.

### B. We Also Lack Jurisdiction over the Investment Company's Objections About Documents the Third Parties Must Produce.

Despite *Cobbledick*'s command that a witness cannot appeal an order until he stands in contempt, there is a narrow exception to this rule "when the subpoenaed party is one who has no direct and personal interest in the suppression of the information desired by the grand jury." *Fine*, 641 F.2d at 201. This exception—established in *Perlman v. United States*—protects privilege holders who are not the target of a subpoena. 247 U.S. 7, 12–13 (1918). *Perlman* allowed immediate appellate review of an order enforcing a subpoena when the objector was not the party subject to the subpoena. *Id.* Because the subpoenaed third party was unlikely to risk contempt to defend another's privilege, the Court held that the enforcement order should be treated as a final order. *Id.* at 13. We have since adopted the *Perlman* exception to prevent "intervenor[s] from losing all rights to appeal if the subpoenaed party does not choose to assume the risk of contempt." *Fed. Grand Jury (FGJ 91-9)*, 975 F.2d at 1492; *accord Fine*, 641 F.2d at 203. But we have described

12                    Opinion of the Court

this exception as "narrow." *Grand Jury Proc.*, 832 F.2d at 558; *accord Branch v. Phillips Petrol. Co.*, 638 F.2d 873, 878 (5th Cir. Unit A Mar. 1981) ("All of the recognized exceptions are extremely narrow, and the lower courts have been exceedingly chary of enlarging their scope.").

The investment company argues that the *Perlman* exception gives us jurisdiction to review the orders. Because the other parties compelled to produce documents are unlikely to stand in contempt, it contends that immediate appellate review is necessary. In particular, the investment company asserts that this exception applies for the portions of the intervention order that compel the accounting firm to produce documents and the portions of the crime-fraud order that compel the accounting firm, the two engineering firms, and the government filter team to produce documents.

We cannot extend the *Perlman* exception to this situation. Review of the investment company's claims over these documents is not impossible—as needed to trigger *Perlman*—because the crime-fraud order compelled the investment company to produce a set of documents that included the same documents that the third parties were required to produce. The Supreme Court explained in *Ryan* that any exception to *Cobbledick,* including *Perlman*, applies "[o]nly in the limited class of cases where denial of immediate review would render *impossible* any review whatsoever of an individual's claims." *Ryan*, 402 U.S. at 533 (emphasis added). The Court further stated that *Perlman* "has no application" in a situation where the objecting party "is free to refuse compliance [by standing in

contempt] and . . . [thereby] obtain full review of his claims before undertaking any burden of compliance with the subpoena." *Id.* at 533–34. We have similarly explained that *Perlman* applies only "if [a privilege holder] would have no other means of appellate review." *Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1323 (11th Cir. 2016).

The crime-fraud order, which stated that the investment company "should not withhold any communications that involve one of the Twelve Attorneys (identified in the motion) and which involve any aspect of [the tax-shelter scheme] or the crimes charged in the Superseding Indictment or crimes the grand jury continues to investigate," requires the investment company to turn over the documents that the third parties had been withholding but were now ordered to produce. The investment company possesses the disputed documents held by the accounting firm, the two engineering firms, and the government filter team because those parties gave them to the investment company to create privilege logs. Because the crime-fraud order was so broad, the investment company could raise all its privilege arguments on appeal if it stood in contempt.

When a set of facts similar to these appeals came before the Eighth Circuit in *In re Grand Jury Subpoenas*, it held that the *Perlman* exception did not apply and dismissed the privilege holder's entire appeal for want of jurisdiction. 974 F.3d 842, 844–45 (8th Cir. 2020). That appeal involved a privilege holder and a third party who possessed the same documents, but the third party did not claim

14                          Opinion of the Court

privilege for them. *Id.* at 843. The privilege holder appealed an or-der compelling both it and the third party to produce the docu-ments. *Id.* The Eighth Circuit concluded that *Perlman* did not apply "because [the privilege holder] is subject to the district court's or-der." *Id.* at 844. It explained that "[i]f [the privilege holder] wishes to pursue an objection to disclosure, then it may resist compliance, submit to contempt sanctions, and secure appellate review." *Id.* It rejected the privilege holder's contention that it should be allowed to appeal without standing in contempt because of the risk that the third party would turn over the documents in the interim. *Id.* It explained that the "[l]ikelihood of production by a third-party cus-todian, however, is not sufficient by itself to invoke *Perlman*. The *sine qua non* of the *Perlman* exception is the inability of the privilege holder to obtain appellate review at the juncture when documents otherwise would be produced." *Id.*

We agree with the reasoning of our sister circuit. The point of the exception is to give an objecting party a chance to raise its arguments on appeal. *See Cobbledick*, 309 U.S. at 328–29 (explaining that *Perlman* ensured that the objecting party was not "den[ied] . . . any appellate review of his constitutional claim"); *see also* 15B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3914.23 (2d ed. 2024) (stating that to invoke the *Perlman* doctrine, the appellant "must not have had any other opportunity to secure review"). That the district court stayed the crime-fraud order pend-ing appeal is further evidence that the investment company could have raised all its privilege arguments before any disclosure had it stood in contempt. Because the investment company is not

"powerless to avert the mischief of the order[s]," *Perlman*, 247 U.S. at 13, we decline to extend the *Perlman* exception any further.

## IV. CONCLUSION

We **DISMISS** these appeals for lack of jurisdiction.